**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

PRINCETON DIGITAL IMAGE     §
CORPORATION,          §
              §
    Plaintiff,        §
              §
v.              §    Civil Action No.  1:12-cv-00779-RJS
              §
CANON INC., *et al.*,      §
              §
    Defendants.      §

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS FOR LACK OF STANDING**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARDS ..................................................................................... 2

     A.     PDIC Has the Burden of Proving That It Has Standing to Bring This Patent Infringement Lawsuit ............................................................................ 2

     B.     To Have Standing, PDIC Must Prove It Holds All Substantial Rights to the Asserted Patents ..................................................................................... 2

     C.     A Standing Challenge Is Properly Addressed Through a Motion to Dismiss Under Federal Rule 12(b)(1) ............................................................. 5

III.   FACTS .......................................................................................................... 6

     A.     The Asserted Patents ..................................................................................... 6

     B.     While PDIC's Predecessor Purported to Purchase the Asserted Patents From GE, GE Nonetheless Retained Substantial Rights ........................................ 6

     C.     PDIC and its Predecessor Have Filed Multiple Complaints Against Defendants on the Asserted Patents ..................................................................... 8

IV.   ARGUMENT ................................................................................................. 9

     A.     PDIC Lacks Standing to Sue Because It Does Not Have All Substantial Rights to the Asserted Patents ..................................................................................... 9

         1.     GE Has Retained the Right to Initiate Infringement Suits In Particular Fields of Use ............................................................................... 10

            a.     The Plain Language of the GE-PDIC Agreement Confirms that GE Retained the Right to Initiate Infringement Suits ........... 11

            b.     GE Confirmed That It Retained the Right To Sue Companies for Infringement Based on the MPEG Standards ................................................................................. 12

            c.     Defendants Risk Multiple Lawsuits on the Asserted Patents ...... 13

         2.     GE Has the Right To Exclude Others From Making, Using, or Selling the Patented Invention ................................................................... 15

         3.     GE Retained the Right to Grant Licenses to the Asserted Patents .......... 16

     B.     The Required Remedy For PDIC's Lack of Standing Is Dismissal of Both Asserted Patents ............................................................................................ 16

V.     CONCLUSION ............................................................................................... 17

WEST\229688641.1

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A123 Sys., Inc. v. Hydro-Quebec*,
  626 F.3d 1213 (Fed. Cir. 2010) ............................................................................................ 11

*Abbott Labs v. Diamedix Corp.*,
  47 F.3d 1128 (Fed. Cir. 1995) ..................................................................................... 3, 14, 15

*Alfred E. Mann Foundation v. Cochlear Corp.*,
  604 F.3d 1354 (Fed. Cir. 2010) ............................................................................................... 4

*Altman v. Bedford Central School Dist.*,
  245 F.3d 49 (2d Cir. 2001) ...................................................................................................... 5

*Aspex Eyewear, Inc. v. Manhattan Design Sudio, Inc.*,
  434 F.3d 1336 (Fed. Cir. 2006) ............................................................................................... 4

*AsymmetRx, Inc. v. Biocare Medical, LLC*,
  582 F.3d 1314 (Fed. Cir. 2009) ..................................................................................... 2, 4, 15

*Ethicon, Inc. v. United States Surgical Corp.*,
  135 F.3d 1456 (Fed. Cir. 1998) ............................................................................................... 3

*Int'l Gamco, Inc. v. Multimedia Games, Inc.*,
  504 F.3d 1273 (Fed. Cir. 2007) ..................................................................................... passim

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
  248 F.3d 1333 (Fed. Cir. 2001) .......................................................................................... 3, 5

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) .................................................................................................... 5

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
  52 F.3d 1026 (Fed. Cir. 1995) ................................................................................................. 2

*Pope Mf'g Co. v. Gormully & Jeffery Mf'g Co.*,
  144 U.S. 248, 12 S.Ct. 641, 36 L.Ed. 423 (1892) ............................................................ 4, 14

*Prima Tek II, L.L.C. v. A-Roo Co.*,
  222 F.3d 1372 (Fed. Cir. 2000) ................................................................................... 2, 3, 4, 16

*Propat Int'l Corp. v. RPost, Inc. et al.*,
  473 F.3d 1187 (Fed. Cir. 2007) ............................................................................................... 5

*Rite-Hite Corp. v. Kelly Co.*,
   56 F.3d 1538 (Fed. Cir. 1995)............................................................................................5

*Schering Corp. v. Roussel-UCLAF SA*,
   104 F.3d 341 (Fed. Cir. 1997)...........................................................................................3

*Sicom Sys. Ltd. v. Agilent Techs, Inc.*,
   427 F.3d 971 (Fed. Cir. 2005).................................................................................... passim

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SpA*,
   944 F.2d 870 (Fed. Cir. 1991)............................................................................................2


## RULES

Federal Rule of Civil Procedure 12(b)(1) ........................................................1, 5, 9, 17


## STATUTES

25 U.S.C. § 281................................................................................................................2

35 U.S.C. § 100(d) ...........................................................................................................2

Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendants Fujifilm North America Corporation ("Fujifilm"), Hewlett-Packard Company ("HP") and Xerox International Partners ("XIP") (collectively "Defendants")[1] request that the Court dismiss the claims brought by plaintiff Princeton Digital Image Corporation ("PDIC") related to U.S. Patent Nos. 4,813,056 ("the '056 patent") and 4,860,103 ("the '103 patent") (collectively the "Asserted Patents") for lack of subject matter jurisdiction, because PDIC lacks standing to sue on the Asserted Patents.

## I.    INTRODUCTION

PDIC lacks standing in this case because it does not hold the exclusive right to sue for infringement.  To have standing to sue, a plaintiff must show that it has obtained, through license or assignment, all substantial rights in a patent.  One of the critical factors in evaluating whether a plaintiff holds all substantial rights in a patent is whether another entity has retained the right to initiate or participate in infringement suits.  If a party seeking to pursue infringement claims lacks all substantial rights in a patent, it must join any other entities sharing those rights or face dismissal of its complaint.  This requirement ensures that a defendant will not be sued separately by multiple plaintiffs for infringement of the same patents.

Here, a third party, General Electric Company ("GE"), retained substantial rights in the Asserted Patents, including the exclusive right to sue Defendants for certain allegedly infringing activities.  Specifically, ███████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████.  It is beyond dispute that PDIC lacks all of the substantial rights to the Asserted Patents, and Defendants are subject to multiple suits on those same patents, PDIC

---

[1] Defendants have consented to having their signatures endorsed on this pleading.

cannot proceed in this lawsuit without GE. Because PDIC filed the complaint on its own, this

case must be dismissed for lack of subject matter jurisdiction.

## II.    LEGAL STANDARDS

### A.    PDIC Has the Burden of Proving That It Has Standing to Bring This Patent Infringement Lawsuit.

In a patent infringement suit, a court may exercise subject matter jurisdiction only if the

plaintiff can prove that it has standing to sue at the time of filing suit. *Prima Tek II, L.L.C. v. A-*

*Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000). The plaintiff bears the burden of proving by a

preponderance of the evidence that it has standing to sue. *See Ortho Pharm. Corp. v. Genetics*

*Inst., Inc.*, 52 F.3d 1026, 1030, 1032-33 (Fed. Cir. 1995). The standing requirement in patent

cases arises from 25 U.S.C. § 281, which requires that a civil action for infringement be brought

by a "patentee." A "patentee" is defined in the statute as the party to whom the patent issued and

the successors in title to the patent. 35 U.S.C. § 100(d); *AsymmetRx, Inc. v. Biocare Medical,*

*LLC*, 582 F.3d 1314, 1318 (Fed. Cir. 2009). Thus, a suit for infringement ordinarily must be

brought by a party holding legal title to the patent. *Id.*

### B.    To Have Standing, PDIC Must Prove It Holds All Substantial Rights to the Asserted Patents.

A patent is "a bundle of rights which may be divided and assigned, or retained in whole

or part." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SpA*, 944 F.2d 870, 873-74 (Fed.

Cir. 1991). To prove it has standing, a plaintiff in a patent infringement suit must show that it

holds legal title to the patent being asserted such that it obtained, through assignment or license,

"all substantial rights." *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed.

Cir. 2007) ("An exclusive licensee has standing to sue in its own name, without joining the

patent holder, where 'all substantial rights' in the patent are transferred…in such a case, the

'exclusive licensee' is effectively an assignee."), citing *Prima Tek II*, 222 F.3d at 1377; *see also*

2

*Abbott Labs v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed. Cir. 1995) (citing *Waterman v. Mackenzie*, 138 U.S. 252, 255, 34 L. Ed. 923, 11 S. Ct. 334 (1891)).  Where an assignee or exclusive licensee lacks significant rights to a patent or significant control over the exercise of patent rights, it has not been conveyed "all substantial rights" to the patent.  *See Intellectual Prop. Dev., Inc.*, 248 F.3d at 1344; *see also Abbott Labs.*, 47 F.3d at 1131 (rejecting argument that grantor transferred all substantial rights under the patents, stating that "although the agreement effected a broad conveyance of rights to [the plaintiff],[grantor] retained substantial interests under the [asserted patents], and [the plaintiff] therefore does not have an independent right to sue for infringement as a 'patentee' under the patent statute.")

Thus, a plaintiff who lacks "all substantial rights in a patent must join in an infringement suit any other entity sharing those substantial rights. *See, e.g., Intellectual Prop. Dev., Inc.*, 248 F.3d at 1347 ("It was proper for IPD, as an exclusive licensee of fewer than all substantial rights in the '202 patent, to add CPL as a party plaintiff."); *see also Prima Tek II*, 222 at 1376-81 (determining that licensee lacked standing to sue without joining patent owner); *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1467-68 (Fed. Cir. 1998) (dismissing infringement suit based on failure to join co-owner of asserted patent); *DDB Techs.*, 465 F. Supp. 2d at 661. With few exceptions, this means that "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997); *Ethicon*, 135 F.3d at 1468.[2]

---

[2] One exception is when a co-owner of a patent contractually waives his right to refuse to join a lawsuit. *Ethicon*, 135 F.3d at 1468, n.9.  Even where a co-owner waives such rights, or where co-owners grant each other the unilateral right to sue, the other co-owners still cannot bring suit in their own name but must force the absent co-owner to join the suit. *Id.* at 1468.

WEST\229688641.1

The Supreme Court long ago identified the primary policy behind this rule:

> It was obviously not the intention of the legislature to permit several monopolies to be made out of one, and divided among different persons within the same limits. Such a division would...subject a party who, under a mistake as to his rights, used the invention without authority, to be harassed by a multiplicity of suits instead of one, and to successive recoveries of damages by different persons holding different portions of the patent-right in the same place....

*Pope Mf'g Co. v. Gormully & Jeffery Mf'g Co.*, 144 U.S. 248, 12 S.Ct. 641, 36 L.Ed. 423 (1892). An additional policy consideration is to prevent a party with less than all rights in a patent to jeopardize the patent rights of a non-party by putting the patent at risk of being held invalid or unenforceable. *Aspex Eyewear, Inc. v. Manhattan Design Sudio, Inc.*, 434 F.3d 1336, 1343 (Fed. Cir. 2006); *Asymmetrx, Inc. v. Biocare Medical, LLC*, 582 F.3d 1314, 1322 (Fed. Cir. 2009).

To determine whether a party holds all substantial rights in a patent, the Federal Circuit has identified the following factors: (1) whether another party has the right to initiate or participate in infringement suits related to the patent; (2) whether another party has the right to exclude others from making, using, or selling the patented invention; and (3) whether another party has the right to grant licenses to the patent. *Int'l Gamco, Inc.*, 504 F.3d at 1278-79; *Sicom Sys.*, 427 F.3d at 977-78; *Prima Tek II*, 222 F.3d at 1380. Significantly, where one party retains the right to sue accused infringers, "that right often precludes a finding that all substantial rights were transferred to the licensee." *Alfred E. Mann Foundation v. Cochlear Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010); *Asymmetrx, Inc.*, 582 F.3d at 1319 (exclusive right to sue is "particularly dispositive" in deciding whether a patent owner must be joined). Patent agreements that divide the scope of patent rights by subject matter do not grant parties to the agreement standing to bring suit individually. *Int'l Gamco, Inc.*, 504 F.3d at 1279.

4

Furthermore, when determining whether a party has obtained all substantial rights to a patent, it is irrelevant how the conveyance is labeled by the parties (such as a "license" or an "assignment.") Instead, the court must focus on the substance of the rights that were actually transferred and any rights that are held by the prior owner. *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1342 (Fed. Cir. 2001) ("The title of the agreement…is not determinative of the nature of the rights transferred under the agreement; actual consideration of the rights transferred is the linchpin of such a determination."); *Int'l Gamco, Inc.*, 504 F.3d at 1279 (rights actually transferred must be examined rather than "often impressionistic distinction between assignments and licenses"). Even where an agreement purports to transfer to the plaintiff exclusive rights to sue for infringement, let alone only part of those rights, a dismissal for lack of standing is appropriate. *Propat Int'l Corp. v. RPost, Inc. et al.*, 473 F.3d 1187, 1194 (Fed. Cir. 2007); *Sicom Sys. Ltd. v. Agilent Techs, Inc.*, 427 F.3d 971, 979-80 (Fed. Cir. 2005) (dismissal appropriate where plaintiff had exclusive right to sue for "commercial" infringement, but not for "non-commercial" infringement).

### C.   A Standing Challenge Is Properly Addressed Through a Motion to Dismiss Under Federal Rule 12(b)(1).

If a plaintiff does not hold exclusive rights to the asserted patent, the complaint must be dismissed if the other parties of interest have not joined the suit. *Intellectual Prop. Dev.*, 248 F.3d at 1348. Thus, a challenge to standing is properly addressed by a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), which may be filed and granted any time prior to judgment. *Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995); *Altman v. Bedford Central School Dist.*, 245 F.3d 49, 69 (2d Cir. 2001). In resolving a Rule 12(b)(1) motion to dismiss for lack of standing, a district court may consider evidence outside the pleadings. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

III.    FACTS

   A.    The Asserted Patents.

Both of the Asserted Patents are directed to compression technology in digital cameras and other products. The '056 patent, which issued in 1989 and expired in 2007, relates to a type of digital compression algorithm for encoding digital signals and is asserted against products that practice the JPEG standard. Former GE employee Nicola J. Fedele is the named inventor of the '056 patent. In 1989, Mr. Fedele assigned the '056 patent to GE. (Ex. C, '056 Assignment.)[3] The '103 patent, which issued in 1989 and expired in 2006, relates to a feedback loop for adjusting the gain of the analog to digital converter and is asserted against digital cameras. Two employees of British Telecom are the named inventors of the '103 patent, and the patent lists British Telecom as the first assignee of the '103 patent. In 2006, British Telecom assigned the '103 patent to GE. (Ex. D, '103 Assignment.)

   B.    While PDIC's Predecessor Purported to Purchase the Asserted Patents
         From GE, GE Nonetheless Retained Substantial Rights.

In May 2009, a predecessor to PDIC called Princeton Digital Image Compression, LLC[4] purchased the '056 and '103 patents from GE. (Ex. A, Patent Purchase and License Agreement, with Amendments, hereinafter "GE-PDIC Agreement.") ████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████. (Ex. A, Section 5, at

PDIC0023018.) ████████████████████████████████

████████████████████████████████████████████████████████

---

[3]   All exhibits are attached to the Declaration of Sean Cunningham filed with this motion.

[4]   Princeton Digital Image Compression LLC is incorporated and based in Princeton, New Jersey, and will be referred to in this motion as "PDIC-NJ."

████████████████████████████████████████. (Ex. A, Section 4, at PDIC0023017.)[5]

████████████████████████████████████████████████████

███████████████████████████████████████. (Ex. E, PDIC

Disclosure of Asserted Claims and Infringement Contentions, at 7.)



(Ex. A, Section 4, at PDIC0023026.)  Thus, GE may assert claims of infringement of the

Asserted Patents against a company and license the Asserted Patents based on particular fields of

use ██████████████████████████████, while PDIC can assert claims of

infringement against the very same company and the very same products based on ███

███████████████████████████████████. (*Id.*)

GE's corporate representative agreed with this interpretation of Section 4:

> Q.  Let me just take a hypothetical asked a minute ago one step
> further.  If there were a single product that used both JPEG and
> MPEG compression under your understanding of the amended
> section 4 small II that's in the June 18th agreement infringement by
> that product of the JPEG portions of the '056 patent would be
> enforceable by PDIC and infringement of the MPEG field of use in
> the patent would be enforceable by GE under this provision, is that
> your understanding.?
> ….

---

[5]  Section 4 was amended three times, on June 18, 2009, July 27, 2009, and January 15, 2010.

The Third Amendment (dated January 15, 2010) sets forth the controlling language for Section 4.

(Ex. A, at PDIC0023026-27.)

> A. My personal understanding which may or may not be correct you know, would be yes.

(Ex. B, Moller Depo. Tr. at 217:17-218:8.)

Moreover, with respect to its rights to enforce the Asserted Patents,



. (Ex. A, Section 4, at PDIC0023018.)  The GE-

PDIC Agreement further specifies that

. *Id.*

### C.   PDIC and its Predecessor Have Filed Multiple Complaints Against Defendants on the Asserted Patents.

On November 12, 2009, PDIC-NJ filed suit in the District of New Jersey alleging that

Fujifilm infringed the Asserted Patents.  PDIC-NJ did not then join GE as a co-plaintiff.  PDIC-

NJ dismissed that lawsuit on January 25, 2010.  Following the dismissal, PDIC-NJ  purported to

assign the Asserted Patents to PDIC, the plaintiff in this case, even though PDIC-NJ never held

all substantial rights to the Asserted Patents. (Ex. F, Patent Assignment, at PDIC0023015.)  In

that assignment, PDIC-NJ claims it

and makes no mention of the substantial rights held by GE in the Asserted

Patents.  (*Id.*)  However, because PDIC-NJ could only assign to PDIC those rights not held by

GE. which owns the exclusive right to bring certain actions, PDIC necessarily lacks all

substantial rights in the Asserted Patents.  Nonetheless, PDIC filed this lawsuit in the Eastern

District of Texas on January 25, 2010, only 12 days after it incorporated in Texas.  (Dkt. No. 55-1, pp. 61-64.)  Again, PDIC did not join GE as a co-plaintiff.[6]

In this case, PDIC has accused products sold by HP that practice both the JPEG and MPEG compression standards.  PDIC claims that HP's personal computers infringe the '056 patent because they include a Windows operating system having a "Microsoft Scanner and Camera Wizard" that practices the JPEG standard.  (Ex. E, at 7.)  The Microsoft Scanner and Camera Wizard is included in the Windows XP, Me and Vista operating systems on HP's PCs.  (Ex. G, Declaration of Craig Walrath, ¶ 3.)  These accused HP PCs practice both the JPEG and MPEG-2 compression standards.  (Ex. G, Walrath Decl., ¶ 4.)

## IV.    ARGUMENT

Under Federal Rule 12(b)(1), the Court must dismiss PDIC's claims for lack of subject matter jurisdiction.  PDIC does not hold all substantial rights to sue for infringement of the Asserted Patents.  Because GE did not join the suit, PDIC lacks standing and its claims must be dismissed.

### A.    PDIC Lacks Standing to Sue Because It Does Not Have All Substantial Rights to the Asserted Patents.

PDIC does not have all substantial rights to the Asserted Patents.  At most, PDIC acquired the right to exclude some but not all companies from practicing some but not all of the technologies the Asserted Patents allegedly cover.  The GE-PDIC Agreement grants PDIC's predecessor and GE rights in particular fields of use, and thereby permits PDIC and GE to file

---

[6]  In November 2010, Defendants moved to transfer the case to the Southern District of New York, and transfer was granted on September 30, 2011.  PDIC moved for reconsideration of the transfer decision, which the court denied on January 27, 2012.  On February 1, 2012, transfer to the Southern District of New York was completed.

WEST\229688641.1

separate infringement suits and otherwise enforce the Asserted Patents against the same

companies on the same accused products. (Ex. A, Section 4, at PDIC0023026.) The Federal

Circuit has addressed the situation of agreements that purport to divide infringement claims by

subject matter and has held that parties to such field-of-use licenses lack standing to bring suit

individually. *Int'l Gamco*, 504 F.3d at 1279 ("an exclusive field of use license subjects an

infringer to suit by multiple parties because the license has split the patented subject matter

amongst various parties"). Because neither party holds all substantial rights to the Asserted

Patents, PDIC does not have standing to maintain this lawsuit by itself. Furthermore, because

Defendants would be subject to multiple suits without GE as a plaintiff in this case, the Court

should dismiss this lawsuit for lack of subject matter jurisdiction.[7]

### 1.   GE Has Retained the Right to Initiate Infringement Suits In Particular Fields of Use.

PDIC lacks standing to sue because GE retained the right to initiate infringement suits

against Defendants and other companies with respect to specific technologies covered by the

Asserted Patents. Therefore, PDIC does not have "the exclusive right to sue for all

infringement" and does not have standing without joining GE as a co-plaintiff. *Sicom Sys.*, 427

F.3d at 979 (party that held right to sue for "commercial infringement" did not have standing

where licensor retained right to sue for "non-commercial infringement"); *Int'l Gamco, Inc.*, 504

F.3d at 1279.

The Federal Circuit's decision in *International Gamco* is controlling. There, the plaintiff

obtained a license to assert the patent, but only with respect to game system networks. *Int'l

Gamco*, 504 F.3d at 1275. The claims of the asserted patent, however, covered more than just

---

[7] Additionally, GE's rights to the Asserted Patents are potentially jeopardized if it is not joined

in this infringement suit. *Asymmetrx, Inc.*, 582 F.3d at 1322.

game system networks. *Id.* at 1279. As a result, the plaintiff did not receive all substantial rights to sue for infringement and lacked standing to maintain the suit alone. *Id.* Supporting this holding, the Federal Circuit noted that:

> allowing a licensee, even one with exclusive rights to the patent for a particular field of use, to sue in its own name alone, poses a substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement.

*Id.* at 1278.

### a. The Plain Language of the GE-PDIC Agreement Confirms that GE Retained the Right to Initiate Infringement Suits.

As in *International Gamco*, the GE-PDIC Agreement gives PDIC (through its predecessor-in-interest, PDIC-NJ) only certain exclusive rights to initiate infringement suits. Therefore, permitting PDIC to sue alone "poses a substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement." *Id.* The GE-PDIC Agreement grants GE ███████████████████████████████████████████████████████████████████████████████████████████████████████. (Ex. A, Section 4, at PDIC0023026.) Because PDIC has no rights to that field of use, PDIC does not hold all substantial rights to sue on the Asserted Patents.

It is irrelevant that GE and PDIC characterized GE's retention of exclusive rights ████ ████████████████████████████████████████████████. (PDIC 2/29/12 Letter to Court, at 2.) It is the substance of an agreement that controls, not the label. *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1218 (Fed. Cir. 2010) ("In determining ownership for purposes of standing, labels given by the parties do not control."). In practice, ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████.

In an effort to avoid dismissal, PDIC focuses on the fact that the GE-PDIC agreement purports to transfer title to PDIC's predecessor, and argues that the grant of rights to GE did not amount to a transfer of title to GE.  (PDIC 2/29/12 Letter to Court, at 2-3.)  This is irrelevant. The fact that the GE-PDIC Agreement purports to transfer "title" to PDIC's predecessor makes no difference, because the Agreement also expressly grants GE ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████  (Ex. A, Section 4, at PDIC0023026.)  Even if "GE did not receive all substantial rights" to the Asserted Patents, as PDIC claims, that does not mean PDIC's predecessor received all substantial rights.  Rather, neither GE nor PDIC has the right to sue for <u>all</u> claimed infringement of the Asserted Patents.  Therefore, both GE and PDIC must join in an infringement suit.  *Int'l Gamco*, 504 F.3d at 1279.

### b.   GE Confirmed That It Retained the Right To Sue Companies for Infringement Based on the MPEG Standards.

GE's representative recently confirmed that GE retained significant exclusive rights to the Asserted Patents.  The witness testified that if a single product used JPEG and MPEG compression, the JPEG portion of the infringement claim would be enforceable by PDIC, while the MPEG portion would be enforceable by GE:

> Q. Let me just take the hypothetical I asked a minute ago one step further.  If there were a single product that used both JPEG and MPEG compression, under your understanding of the amended Section 4, small ii that's in the June 18th agreement, infringement by that product of the JPEG portions of the '056 patent would be enforceable by PDIC and infringement of the MPEG field of use in the patent would be enforceable by GE under this provision; is that your understanding?
> ....
> A. My personal understanding, which may or may not be correct, you know, would be yes.

(Ex. B, Moller Depo. Tr. at 225:23-226:16.)  Furthermore, at least one of the Asserted Patents is

part of the MPEG LA patent pool.  (*Id.* at 56:16.)  Because GE obtains royalties from this pool, it

wanted to retain the exclusive rights to any MPEG technology covered by the Asserted Patents.

(*Id.* at 224:18-23:  "[B]ecause of those MPEG LA agreement the MPEG-2 pool and the licenses

that had been granted, [GE] needed to exclude that out from...whatever rights that...PDIC would

acquire from these patents.")  Therefore, GE retained "certain reserved exclusive rights that were

granted back" to the Asserted Patents.  (*Id.* at 84:3-5.)

<div align="center">

**c.   Defendants Risk Multiple Lawsuits on the Asserted Patents.**

</div>

Neither GE nor PDIC has individual standing to pursue infringement claims without

violating the standing requirement against the threat of multiple suits for the same act of

infringement. *Int'l Gamco*, 504 F.3d at 1279.  GE confirmed that if a single product uses both

JPEG and MPEG compression covered by the Asserted Patents, then an accused infringer would

be subject to separate suits—one by GE for MPEG infringement and another by PDIC for JPEG

infringement.  (Ex. B, Moller Depo. Tr. at 217:17-218:8.)  Whether such a result would ever

occur based on the specific products in this case is irrelevant, because the court must look to the

intention of the parties and the substance of the agreement to determine whether all substantial

rights were conveyed.  *See Sicom*, 427 F.3d at 979 (plaintiff's argument that it was not suing for

infringement beyond its rights to the patents-in-suit "unpersuasive" and rejecting assertion that

court should not consider risks outside the scope of the facts).

Here, the GE-PDIC Agreement allows GE and PDIC the right to enforce certain patent

rights against third parties.  Therefore, allowing either party to proceed with an infringement suit

without joining the other opens accused infringers to multiple suits based on a single alleged act

of infringement—such as making or selling a personal computer.  Indeed, the GE-PDIC

Agreement contemplates the possibility that GE would need to be involved in litigation brought

<div align="center">13</div>

by PDIC's predecessor.  (Ex. A, Section 6, at PDIC0023018 ████████████████████

████████████████████████████████████████████████████████████████

████████ .)  *See Abbott Labs.*, 47 F.3d at 1132 (patent owner retained a substantial rights in

patent because agreement provided owner the right to be represented by counsel of its own

selection in a suit by the plaintiff).

Moreover, the threat of multiple suits on the Asserted Patents is not a theoretical one.

PDIC has accused scores of HP personal computers containing Microsoft Windows operating

systems that practice both the JPEG and MPEG-2 standards.  (Ex. E, at 7; Ex. G, Walrath Decl.

¶¶ 3-4.)  Fujifilm also sells products that use both MPEG and JPEG compression technology.

Therefore, without joining GE, Defendants could be subject to multiple lawsuits—PDIC's suit

based on products that practice JPEG and a GE lawsuit based on the same products' practice of

MPEG.  Defendants must not be "harassed by a multiplicity of suits instead of one, and to

successive recoveries of damages by different persons holding different portions of the patent-

right...."  *Pope Mf'g*, 144 U.S. at 248.

In fact, at least Defendants HP and Fujifilm already are subject to "successive recoveries

of damages by different persons holding different portions of the patent-right," as *Pope*

*Manufacturing* cautioned against.  HP is a member of the MPEG-2 patent pool, and therefore has

paid license fees for a license to the '056 patent.  (Ex. H, MPEG LA Web pages at p. 7 of 17.)

Fujifilm is a member of the MPEG-4 patent pool and has similarly paid license fees for rights to

the '056 patent as well.  (*Id.* at p.1.)  HP and Fujifilm should not be subject to "successive

recoveries" under the Asserted Patents, but rather are entitled to have all of their rights and

14

liabilities as to the Asserted Patents adjudicated once, in this case.[8]  *See Asymmetrx, Inc.*, 582

F.3d at 1321-22 (fact that the non-party licensor was receiving royalty payments from defendant

based on its sales that the plaintiff also accused of infringement supported conclusion that the

possibility of incomplete relief from the same subject matter weighed in favor of joining non-

party licensor).

<p style="text-align:center">**2.      GE Has the Right To Exclude Others From Making, Using, or Selling<br>the Patented Invention.**</p>

Under the GE-PDIC Agreement, both GE and PDIC have the right to exclude others from

making, using, or selling the patented invention.  *International Gamco, Inc.*, 504 F.3d at 1278-79

(licenses similar to the GE-PDIC Agreement are considered field of use licenses and do not

confer standing on either party individually).  Just as GE retained the right to initiate

infringement suits, it also retained the ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████.  (Ex. A, Section 4, at PDIC0023026.)  The ████████████████ necessarily includes the

right to exclude others from making, using, or selling the patented invention.  Conversely, if an

accused infringer makes a product ██████████████████████████████████████████ and is

covered by a claim of the Asserted Patents, PDIC has no rights or authority to stop the accused

infringer from making, using, offering to sell, or selling that product.  Thus, PDIC does not have

all substantial rights to the Asserted Patents.  *Int'l Gamco, Inc.*, 504 F.3d at 1278-79; *Abbott*

---

[8]  The threat of multiple suits impacting HP also arises because ████████████████████████████

███████████████████████████████████████.  (Ex. A, Section 4, at PDIC0023026.)

Microsoft supplies HP with the operating systems accused of infringement by PDIC.  (Ex. E, at

7.)  Thus, HP could be impacted by PDIC's suit against HP's computers and GE's suit against

Microsoft's operating systems supplied to HP.

<p style="text-align:center">15</p>

*Labs.*, 47 F.3d at 1132 (the "right to indulge infringements...normally accompanies a complete conveyance of the right to sue.").

### 3. GE Retained the Right to Grant Licenses to the Asserted Patents.

GE indisputably retained the right to grant licenses to the Asserted Patents, specifically

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████. (Ex. A.)  Thus, if a product uses both

JPEG and MPEG technology, an accused infringer must seek two licenses to avoid threats of

infringement.  For example, for HP's PCs to be licensed, HP would need ████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████.  Therefore, PDIC lacks standing to maintain this

lawsuit without joining GE as a co-plaintiff.  *Int'l Gamco, Inc.*, 504 F.3d at 1278-79.

### B. The Required Remedy For PDIC's Lack of Standing Is Dismissal of Both Asserted Patents.

Upon finding that PDIC lacks standing, the Court should dismiss the complaint.  *Sicom*,

427 F.3d at 980 (affirming dismissal of complaint).  PDIC lacked standing when it filed suit and

should not be allowed to "cure" this defect by adding GE to the suit now, even if GE agreed to

be joined.  *See Prima Tek II*, 222 F.3d at 1376-81 (case dismissed for lack of standing).

Furthermore, contrary to PDIC's argument in its responsive pre-motion letter and at the

March 16, 2012 hearing, the Court should dismiss PDIC's claims as to both the '056 and '103

patents.  The GE-PDIC Agreement █████████████████████████████████████████

████████████████████████████████ (Ex. A, Section 1.3, at PDIC0023016.)  ███

████████████████████████████████████████████████████████████████████

███████████████████████████.  (Ex. A, Section 4, at PDIC0023026-27.)  GE is granted the rights to

████████████████████████████████████████████████████████████████████

16

████████████████ with respect to both of the Asserted Patents. It is therefore irrelevant that the '103 patent may not be "not directed to the practice of either the JPEG or MPEG standards," as PDIC contends (PDIC 2/29/12 Letter to Court, at 3), because GE indisputably has the right to sue on the '103 patent regardless whether the accused products actually practice the claims of that patent. *See Sicom*, 427 F.3d at 979 (focusing only on the parties in the suit fails to account for the overall intent of the parties to the licensing agreement and is not proper when determining standing).

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss PDIC's complaint for lack of standing under Rule 12(b)(1).

Dated: March 23, 2012

<div style="margin-left: 40%;">

*s/ Sean C. Cunningham*
Sean C. Cunningham (*pro hac vice*)
sean.cunningham@dlapiper.com
Erin P. Gibson (*pro hac vice*)
erin.gibson@dlapiper.comjon
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:   619-699-2700
Facsimile:   619-699-2701

Brian K. Erickson (*pro hac vice*)
brian.erickson@dlapiper.com
**DLA PIPER US LLP**
401 Congress Ave., Suite 2500
Austin, TX  78701-3799
Telephone:   512-457-7059
Facsimile:   512-457-7001

**ATTORNEYS FOR DEFENDANT HEWLETT PACKARD COMPANY**

</div>

*s/ Steven J. Routh (with permission)*
Steven J. Routh (*pro hac vice*)
srouth@orrick.com
LEAD ATTORNEY
Sten A. Jensen (*pro hac vice*)
sjensen@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1152 15th Street, NW
Washington DC  20005
Telephone:     202-339-8400
Facsimile:      202-339-8500

Clifford R. Michel
cmichel@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019
Telephone:     212-506-5000
Facsimile:      212-506-5151

**ATTORNEYS FOR DEFENDANT FUJIFILM
NORTH AMERICA CORPORATION**

*s/ Richard A. Williamson (with permission)*
Richard A. Williamson
rwilliamson@fzwz.com
Craig S. Kesch
ckesch@fzwz.com
**FLEMMING ZULACK WILLIAMSON
ZAUDERER LLP**
One Liberty Plaza
New York, New York 10006-1404
Tel: (212) 412-9500
Fax: (212) 964-9200

William H. Mandir (*pro hac vice*)
wmandir@sughrue.com
John F. Rabena (*pro hac vice*)
jrabena@sughrue.com
Yoshinari Kishimoto (*pro hac vice*)
ykishimoto@sughrue.com
Kelly G. Hyndman (*pro hac vice*)
kghyndman@sughrue.com

18

Brian K. Shelton (*pro hac vice*)
bshelton@sughrue.com
**SUGHRUE MION, PLLC**
2100 Pennsylvania Ave., NW
Washington, DC  20037
Telephone:      202-775-7515
Facsimile:      202-293-7860

**ATTORNEYS FOR DEFENDANT
XEROX INTERNATIONAL PARTNERS**

WEST\229688641.1