IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRINCETON DIGITAL IMAGE CORPORATION,<br><br>                      Plaintiff,<br><br>-v-<br><br>HEWLETT-PACKARD, *et al.*,<br><br>                      Defendants. | No. 12 Civ. 779 (RJS) |
| PRINCETON DIGITAL IMAGE CORPORATION,<br><br>                      Plaintiff,<br><br>-v-<br><br>FACEBOOK INC., *et al.*,<br><br>                      Defendants. | No. 12 Civ. 6973 (RJS) |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE,
<u>FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(B)</u>**

INTRODUCTION

PDIC continues its sleight of hand by (1) misstating and mischaracterizing Defendants' position as seeking to treat PDIC "as though it were a licensee," and (2) misconstruing and minimizing the substantial rights held by GE in its assigned fields of use under the Agreement. Contrary to PDIC's repeated assertion, the dispute here is not about PDIC's or GE's constitutional standing. The issue very simply is whether PDIC has prudential standing to maintain this suit on its own, regardless of its status as a patentee. Reconsideration is warranted because the Order does not analyze GE's substantial, exclusionary rights under the Agreement, nor does the Order address the prudential standing concerns that flow from the fact that PDIC did not retain those rights. In addition, in arguing against certification, PDIC wrongly asserts that Defendants' standing argument "is not a pure legal question," and apparently tries to treat paraphrases from the GE-PDIC Agreement as disputed "facts." But the standing dispute here is a purely legal question—it requires the Court's legal interpretation of unambiguous language of the Agreement applied to the controlling law from *International Gamco* and other Federal Circuit standing decisions involving field-of-use agreements. The Court should reconsider its March 21, 2013 Order or, at a minimum, certify the Order for interlocutory appeal to the Federal Circuit.

ARGUMENT

I.   **RECONSIDERATION IS WARRANTED TO CORRECT A CLEAR ERROR AND TO ADDRESS CONTROLLING LEGAL AUTHORITY ON PRUDENTIAL STANDING WITH FIELD-OF-USE AGREEMENTS.**

PDIC's opposition seeks to perpetuate the myth that GE received no "exclusionary rights" in the asserted patents when GE in fact obtained exclusive rights to enforce those patents in its designated fields of use. PDIC argues that Defendants "seek to treat PDIC as though it were a licensee instead of successor-in-title to the patents-in-suit." Opp. at 3. On the contrary,

1

Defendants recognize that PDIC is the successor to the asserted patents and that it is not merely a licensee. But that is not the end of the legal inquiry, as the Order erroneously concludes. Rather, because the GE-PDIC agreement divides up the rights in the asserted patents into different fields of use, the legal inquiry must continue to determine what rights GE holds and whether those rights are "substantial" rights (and conversely, whether PDIC does not hold all substantial rights).[1] That is the proper legal inquiry, and the Order did not conduct it. The Order's failure to recognize GE's exclusionary rights constitutes a clear error warranting reconsideration. *New York v. Locke,* No. 08-cv-2503, 2009 WL 2413463, at *2 (E.D.N.Y. Aug. 3, 2009).

> **A.    GE Unquestionably Holds "Exclusionary Rights" in the Asserted Patents, Which PDIC Ignores.**

PDIC argues that there was an "absence of a grant of exclusionary rights" to GE. Opp. at 4. PDIC also argues that the "holder of only 'an exclusive right to sue' cannot sue for patent infringement," citing *Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007). Opp. at 5. On the contrary, the plain language of the Agreement confirms that GE was granted so-called "exclusionary rights" that existed at the time of the Agreement, and that GE was granted much more than "only" an exclusive right to sue.

First, the plain language of the Agreement—which PDIC once again refuses to acknowledge—unquestionably grants GE "exclusionary rights" in the asserted patents. Because GE holds exclusionary rights, it suffers "constitutional injury in fact" from allegedly infringing

---

[1] Contrary to PDIC's assertion (Opp. at 3), neither the *Morrow* decision nor other precedent specifically reserves the "all substantial rights" inquiry solely to determinations of a licensee's ability to sue. *See, e.g., Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010) ("When a plaintiff lacking a sufficiently large portion for rights brings suit, that plaintiff does not have standing to sue on its own…"). Indeed, such a holding runs contrary to the well-established principle that labels and titles given by parties to a patent agreement are not controlling. *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1342 (Fed. Cir. 2001); *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006). *See also King Pharms., Inc. v. Teva Pharm. USA, Inc.*, Civil Action No. 05-3855, 2007 U.S. Dist. LEXIS 4268 *17-18 (D.N.J. Jan 22, 2007).

activities. *Morrow*, 499 F.3d at 1341 ("constitutional injury in fact occurs when a party performs at least one prohibited action with respect to the patent invention that violates these exclusionary rights"). Here, the "constitutional injury" for purposes of standing began to occur no earlier than six years before PDIC filed its complaints (January 25, 2004 for the HP case; September 10, 2005 for the Facebook case) and <u>stopped</u> occurring on October 9, 2006 (when the '103 patent expired) and on December 8, 2007 (when the '056 patent expired). After both of the asserted patents expired, neither GE nor PDIC could or did suffer any constitutional injury. *Hakan Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (plaintiff not entitled to damages or injunctive relief after expiration of patent); *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 434 F. Supp. 2d 257, 265 (S.D.N.Y. 2006) (same). The only "constitutional injury" that PDIC can allege would have occurred during a period (at the longest) from January 2004 through December 2007, approximately two years and 11 months of past infringement.

When GE passed title to the patents to PDIC's predecessor in July 2009, it passed the right to sue for a portion of the constitutional injury that allegedly occurred between January 2004 and December 2007.[2] But the Agreement grants <u>GE</u> the right to sue for the constitutional injury that allegedly occurred during that time period in two distinct fields of use: (1) a field of use defined as "the exclusive right to enforce" the patents against the 17 entities listed in the Third Amendment to the Agreement; and (2) a second field of use defined as "the exclusive right to enforce" the patents against "any entity" whose alleged infringement arose from making, using, selling, offering for sale, or importing articles that comply with the MPEG-2 or MPEG-4

---

[2] On February 17, 2004, the prior owner of the '103 patent, British Telecom, transferred that patent to GE. Thus, British Telecom was the owner of that patent for the first month of the alleged "constitutional injury" period.

video compression standards." Agreement § 4, as amended (PDIC0023026). Under the Agreement, GE holds the following "Exclusive Rights" in its fields of use:

- All "rights and interest to all past, present, and future claims of infringement" in GE's listed fields of use;

- The "exclusive right to enforce" the patents in GE's fields of use;

- The "exclusive right to…license" the asserted patents in GE's fields of use;

- The "exclusive right to…bring suit" in GE's fields of use;

- The right to force PDIC to join in any "enforcement action brought by GE or GETD" at the "sole discretion of GE or GETD";

- The ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ brought by GE or GETD;

- The ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ in suits brought by GE or GETD; and

- The sole right to retain ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ in GE's fields of use.

These rights are not "illusory," as the Order finds, but rather are explicit grants of substantial, exclusionary rights to GE that implicate prudential standing concerns with respect to PDIC. PDIC, on the other hand, lacks these rights: PDIC has no right to enforce, no right to sue, no right to license, no right to participate in settlement, no right to choose counsel and no right to any revenue generated in GE's fields of use. And significantly, PDIC has no power to dissolve GE's rights—if PDIC were to transfer the asserted patents to a successor, GE's exclusive rights would carry forward to the new owner. For instance, PDIC cannot grant an exclusive (or even a non-exclusive) license to the entirety of the asserted patents to anyone else, because GE already has the exclusive rights to control the patents in its fields of use. *Cf. Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998) ("if a patentee-licensor is free to grant licenses to others, licensees under that patent are not exclusive licensees").

4

Because the patents were expired when GE assigned the patents to PDIC's predecessor, neither GE nor PDIC had or have the "right to exclude" anyone from practicing the asserted patents. This is because the right to exclude exists only in an unexpired patent. *See Hakan Lans*, 252 F.3d at 1328. But that is not the end of the inquiry, because the right to sue and collect damages and the right to license also are important exclusionary rights, even in expired patents.

This is not the case of *Propat*, where a licensee lacked sufficient exclusionary rights to trigger a standing problem. As the Federal Circuit explained in *Morrow*:

> Even in *Propat*, this court found that Propat had no standing to participate in an infringement suit though it enjoyed the exclusive right to sue third parties for patent infringement, the right to grant licenses to third parties, and the right to enforce license agreements. 473 F.3d at 1191. <u>Propat's right to license and sue third parties was subject to prior approval by the legal title holder Authentix</u>—approval that could not be unreasonably withheld. <u>Propat was also required to receive the consent of Authentix before it assigned rights or obligations under the agreement to another party</u>. This court held that Authentix did not assign all substantial rights to Propat and Propat could not even sue as a co-plaintiff with Authentix. *Propat*, 473 F.3d at 1189 (noting that even if Authentix was a party this would not ameliorate Propat's standing problem). Propat lacked sufficient exclusionary rights and therefore did not suffer statutory legal injury.

*Morrow,* 499 F.3d at 1344, emphasis added. The present case presents precisely the opposite circumstance. Here, GE does not need to seek prior approval of PDIC to initiate lawsuits in its fields of use, and GE is not required to seek or receive the consent of PDIC before GE assigns its rights or obligations under the Agreement to another party. Thus, unlike Propat, GE unquestionably holds "exclusionary rights" in the asserted patents. Because GE holds these "exclusionary rights," PDIC necessarily <u>does not</u> hold them. Thus, prudential standing concerns required joinder of GE when this lawsuit was filed. *International Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1279 (Fed. Cir. 2007).

### B. Reconsideration Is Warranted So the Court Can Squarely Address *International Gamco* and Other Federal Circuit Standing Decisions Involving Field-of-Use Agreements.

PDIC's opposition once again ignores that its agreement with GE is, unambiguously, a field-of-use agreement. As set forth above, the agreement explicitly grants GE exclusive rights to certain fields of use. Because PDIC did not retain exclusive rights within <u>all</u> fields of use, PDIC must satisfy the prudential standing requirements, which it cannot do without joining GE. PDIC acknowledges that the Order does not cite the controlling Federal Circuit opinion in *International Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273 (Fed. Cir. 2007) (Opp. at 2), which holds that a party with an exclusive right of enforcement within only a particular field of use lacks standing to bring an infringement action on its own. This holding is directly applicable to PDIC.

PDIC argues that the Court must have necessarily considered *International Gamco* and conducted a prudential standing inquiry in considering Rule 19 joinder issues. However, no analysis of prudential standing appears in the Order. Because *International Gamco* is the controlling decision on prudential standing involving a field-of-use license, such as the Agreement here, reconsideration is warranted so the Court can squarely address *International Gamco* and other standing decisions involving field-of-use agreements. *See A123 Systems Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1222 (Fed. Cir. 2010) ("Because HQ is a field-of-use licensee and UT has retained non-overlapping rights in the patents in suit, UT may very well be able to assert infringement claims against A123 that HQ cannot, creating the risk of multiple lawsuits and of inconsistent relief."); *International Gamco, Inc.,* 504 F.3d at 1279 ("an exclusive field of use license subjects an infringer to suit by multiple parties because the license has split the patented subject matter amongst various parties").

## II. CERTIFICATION IS APPROPRIATE HERE TO RESOLVE A "CONTROLLING QUESTION OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION."

The controlling question of law as to which there is substantial ground for difference of opinion is: Whether the prudential standing requirement compels a patent owner (here, PDIC) with less than all substantial rights in patents to join the holder of exclusive rights in one or more fields of use (here, GE) prior to filing suit to enforce the patents. *International Gamco* and district courts have issued differing opinions in cases involving similar facts, as set forth in Defendants' opening brief. Moreover, although *International Gamco* is the closest controlling authority, its holding relates to whether an exclusive licensee must join a patent owner—whereas here, the issue is whether the patent owner (PDIC) must join a holder of exclusive rights (GE). The controlling question of law set forth above is a matter of first impression for the Federal Circuit. In addition, to the extent the Order rests on an understanding that GE retained no substantial rights under the Agreement because the patents had expired, that understanding is not supported by Federal Circuit precedent and is directly contrary to district court authority on point. *Compare* Order at 11-12 *with New Medium Techs. LLC v. Barco N.V.*, 644 F. Supp. 2d 1049, 1060 (N.D. Ill. July 5, 2007) (transfer of right to sue after expiration of patent conferred substantial rights sufficient to support standing because "the right to sue for prior infringement was the only right in play at the time of transfer"). And the question of PDIC's standing is a controlling question of law because the Court may exercise subject matter jurisdiction only if PDIC had standing to sue at the time it filed suit. Order at 5, citing *Prima Tek II, L.L.C.,* 222 F.3d at 1377. Thus, the Order satisfies the criteria for interlocutory appeal.

In attempting to avoid interlocutory appeal, PDIC argues that such an appeal would not involve a pure question of law. Opp. at 9-10. Indeed, PDIC tries to characterize its paraphrasing of the unambiguous GE-PDIC Agreement as disputed facts. Opp. at 10. As an initial matter,

whether this interlocutory appeal presents a "pure" or "clear" question of law has nothing to do with the correct legal test for certification in 28 U.S.C. § 1292(b).  PDIC's argument relates to the contents of the certification order itself, and the cases PDIC cites to support its argument are inapposite in any event.  In *Pin/Nip, Inc. v. Platte Chemical Co.*, 250 F.3d 754 (Fed. Cir. 2000) (unpublished), the issues cited by the district court as appropriate for interlocutory review were "factual jury determinations." *Id.*, at *1.  In *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.*, 185 F.3d 879 (Fed. Cir. 1998) (unpublished), the district court similarly certified its summary judgment order related to patent invalidity—again, a question of fact for the jury. *Id.*, at *1.

Here, no disputed facts can arise from an unambiguous legal document, such as the Agreement.  New Jersey law, which is the choice of law in the Agreement, holds that "[i]nterpretation and construction of a contract is a matter of law for the trial court, subject to *de novo* review on appeal."  *Fastenberg v. Prudential Ins. Co. of Am.,* 309 N.J. Super. 415, 420 (App. Div. 1998).  In this case, the question presented is one of contract interpretation and thus is a pure question of law. *Id.*

PDIC finally and incorrectly argues that Defendants have not identified any "exceptional circumstances" justifying an immediate interlocutory appeal.  Opp. at 11.  But PDIC created the exceptional circumstances by filing an exceptional number of lawsuits on patents that have now been expired for more than six years (the '103 patent) and more than five years (the '056 patent).  This includes all of the lawsuits pending before this Court and 52 other infringement lawsuits in the District of Delaware.  Whether PDIC has prudential standing is a threshold legal issue for every one of these dozens of lawsuits.  Thus, certification of the prudential standing issue for interlocutory appeal will avoid the potential unnecessary expenditure of resources by the Courts, by PDIC and by more than 60 defendants, in the event the Federal Circuit rules in Defendants'

8

favor on appeal.  Considerations of judicial economy are best served by certifying for interlocutory review the question of whether PDIC has prudential standing to maintain these suits on its own.

## CONCLUSION

For the reasons set forth above and in Defendants' opening brief, the Court should reconsider its March 21, 2013 Order and grant Defendants' motion to dismiss, or certify the Order for immediate appeal to the Federal Circuit Court of Appeals under 28 U.S.C. § 1292(b).

Dated:  April 16, 2013

*/s/ Sean C. Cunningham*
Sean C. Cunningham (*pro hac vice*)
sean.cunningham@dlapiper.com
Erin P. Gibson (*pro hac vice*)
erin.gibson@dlapiper.com
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:     619-699-2700
Facsimile:     619-699-2701

Brian K. Erickson (*pro hac vice*)
brian.erickson@dlapiper.com
**DLA PIPER US LLP**
401 Congress Ave., Suite 2500
Austin, TX  78701-3799
Telephone:     512-457-7059
Facsimile:     512-457-7001

**ATTORNEYS FOR DEFENDANT
HEWLETT-PACKARD COMPANY**


*s/ Steven J. Routh (with permission)*
Steven J. Routh (*pro hac vice*)
srouth@orrick.com
LEAD ATTORNEY
Sten A. Jensen (*pro hac vice*)
sjensen@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1152 15th Street, NW
Washington DC  20005

9

Telephone: 202-339-8400
Facsimile: 202-339-8500

Clifford R. Michel
cmichel@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019
Telephone: 212-506-5000
Facsimile: 212-506-5151

**ATTORNEYS FOR DEFENDANT FUJIFILM NORTH AMERICA CORPORATION**


*s/ Richard A. Williamson (with permission)*
Richard A. Williamson
rwilliamson@fzwz.com
Craig S. Kesch
ckesch@fzwz.com
**FLEMMING ZULACK WILLIAMSON ZAUDERER LLP**
One Liberty Plaza
New York, New York 10006-1404
Tel: (212) 412-9500
Fax: (212) 964-9200

William H. Mandir (*pro hac vice*)
wmandir@sughrue.com
John F. Rabena (*pro hac vice*)
jrabena@sughrue.com
Yoshinari Kishimoto (*pro hac vice*)
ykishimoto@sughrue.com
Kelly G. Hyndman (*pro hac vice*)
kghyndman@sughrue.com
Brian K. Shelton (*pro hac vice*)
bshelton@sughrue.com
**SUGHRUE MION, PLLC**
2100 Pennsylvania Ave., NW
Washington, DC 20037
Telephone: 202-775-7515
Facsimile: 202-293-7860

**ATTORNEYS FOR DEFENDANT XEROX INTERNATIONAL PARTNERS**


*/s/ Heidi Lyn Keefe (with permission)*
Heidi Lyn Keefe
Elizabeth L. Stameshkin

Mark Randolph Weinstein
Cooley LLP
5 Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone: 650-843-5000
Facsimile: 650-849-7400
hkeefe@cooley.com
lstameshkin@cooley.com
mweinstein@cooley.com

Michael Graham Rhodes
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone:  415-693-2000
Facsimile:  415-963-2222
rhodesmg@cooley.com

Jeffrey Norberg
Cooley, LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-857-0663
jnorberg@cooley.com

Deron R. Dacus
The Dacus Firm, PC
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: 903-705-1117
Facsimile: 903-705-1117
ddacus@dacusfirm.com

**ATTORNEYS FOR DEFENDANT FACEBOOK, INC.**

*/s/ Christopher Schenck (with permission)*
Christopher Schenck
Bracewell & Giuliani – Seattle
701 Fifth Avenue, Suite 600
Seattle, WA 98104
Telephone: 206-204-6200
Facsimile: 206-204-6262
chris.schenck@bgllp.com

11

Alan D. Albright
Benjamin Lee Bernell
Bracewell & Giuliani – Austin
111 Congress Avenue, Suite 2300
Austin, TX 78701
Telephone: 512-472-7800
Facsimile: 512-472-9123
alan.albright@bgllp.com
ben.bernell@bgllp.com

John Allen Yates
Bracewell & Giuliani – Houston
711 Louisiana St., Suite 2300
Houston, TX 77002
Telephone: 713-221-1375
Facsimile: 713-222-3296
jay.yates@bgll.com

**ATTORNEYS FOR DEFENDANT CORBIS CORPORATION**

*/s/ Ramsey M. Al-Salam (with permission)*
Ramsey M. Al-Salam
Sher S. Kung
Perkins Coie LLP (Seattle)
1201 Third Avenue, 40th Floor
Seattle, WA 98101
Telephone: 206-359-6385
Facsimile: 206-359-7385
skung@perkinscoie.com
ralsalam@perkinscoie.com

Manny Joseph Caixeiro
Perkins Coie LLP
30 Rockefeller Plaza, 25th Floor
New York, NY 10112
Telephone: 212-977-6900
Facsimile: 212-977-1649
mcaixeiro@perkinscoie.com

**ATTORNEYS FOR DEFENDANT GETTY IMAGES (US), INC.**