IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **PRINCETON DIGITAL IMAGE CORPORATION,**<br><br>            **Plaintiff,**<br><br>    v.<br><br>**HEWLETT-PACKARD COMPANY, ET AL.**<br><br>            **Defendants.** | Case No. 12-cv-00779-RJS |

### DECLARATION OF GEORGE PAZUNIAK IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I, George Pazuniak, Esq. declare as follows:

1.      I am an attorney admitted to practice before the Supreme Court of the State of Delaware, and am admitted *pro hac vice* in this case as counsel to Plaintiff Princeton Digital Image Corporation ("Plaintiff" or "PDIC").  I am over twenty-one years of age and am not under any legal disability, and I have either personal knowledge of the facts set forth in this declaration or have investigated the record to determine the facts, and could testify competently to these matters if called to do so.

2.      I make this declaration view of the motion for summary judgment filed by Defendants Fujifilm North America Corporation ("Fuji") and Hewlett-Packard Company ("HP") (collectively, "Defendants"), both based on an agreement between PDIC and Microsoft Corporation ("Microsoft Agreement").  The two motions for summary judgment are D.I. 433 and 437, respectively, and will collectively be referred to as "Motion."

3.      In support of the Motion, Defendants filed a Memorandum Of Law In Support Of Defendants' Motion For Summary Judgment Of Noninfringement Based On Settlement

Agreement Between Plaintiff And Microsoft Corp. (D.I. 444) ("Brief"), as well as Declarations of certain of Defendants' employees, Masanori Yoshida (DI 436) for Defendant Fuji; and Curt Behrend (DI 438); Paolo Fontani (DI 439); Bradley R. Larson (DI 440) and Jimmie Sato (DI 441) for Defendant HP.  Additionally, Defendants rely on the "Declaration Of Christopher J. Higgins In Support Of Defendants' Motion For Summary Judgment" (D.I. 435), and "Declaration Of Sean C. Cunningham In Support Of Defendant Hewlett-Packard Company's Motion For Summary Judgment Of Noninfringement Based On Settlement Agreement Between Plaintiff And Microsoft Corp." (D.I. 442), each of which purports to identify certain exhibits relied upon by the Defendants in support of the Motion.

4. Attached as PDIC Exhibit 1 is a compilation of the original and a supplement of disclosure submitted by Defendant Fuji, and which I believe to be the only disclosures pursuant to Fed.R.Civ.P. Rule 26(a)(1) submitted by Defendant Fuji.  Attached as PDIC Exhibit 2 is a compilation of the original and two supplements of disclosure submitted by Defendant HP, and which I believe to be the only disclosures pursuant to Fed.R.Civ.P. Rule 26(a)(1) submitted by Defendant HP.

5. Attached as PDIC Exhibit 3 is Defendant Hewlett-Packard Company's Notice Of Rule 30(B)(6) Deposition Of Plaintiff Princeton Digital Image Corporation.

6. The following documents cited in the Brief (D.I. 444) have never been produced or otherwise disclosed during the fact discovery period of this case, and were first disclosed after the close of fact discovery: Exhibits A, B and C.

7. Of the declarants, Defendant Fuji's sole declarant, Masanori Yoshida (DI 436), was never disclosed.  Of the HP declarants:

- Jimmie Sato (DI 441) was never disclosed.

- Bradley R. Larson (DI 440) was disclosed only on the last day of discovery, February 6, 2014.  He was deposed in January 2014, but as a Rule 30(b)(6) witness on topics that are unrelated to the issues for which he has now filed a declaration.

- Paolo Fontani (DI 439) was disclosed for the first time on December 31, 2013, but not as a person with knowledge of the subject matter of his declaration.  He was further disclosed as knowledgeable on other topics on the last day of discovery, February 6, 2014.  Although he was deposed on February 4, 2014, the deposition took place before his updated identification, and at a time when Mr. Fontani was not identified as a person with any knowledge of any issues relevant to the present proceedings.

- Curt Behrend (DI 438) was disclosed, but only with respect to the "Design, structure, function and operation of accused HP inkjet all-in-one printers," and never disclosed as knowledgeable on the subject matter of his declaration.

8. In accordance with Fed.R.Civ.P. Rule 56(d), counsel states that Defendants' contentions in the Motion were raised by Defendants for the first time after the close of discovery or on the last day of discovery.

9. In order to fully and comprehensively respond to the Motion, PDIC requires discovery of the substance of the various declarations filed by the Defendants and the technical arguments in Defendants" brief.  Below is an identification of the specific discovery required and the reasons that the discovery is required with respect to each of the declarations filed by Defendants, separately for each declaration, and with respect to the technical arguments in Defendants" brief.

DECLARATION OF MASANORI YOSHIDA (D.I. 436)

10. Mr. Yoshida states that Fuji has many licenses with Microsoft.  (D.I. 436 at ¶ 4).  However, only two alleged licenses are identified – one that allegedly provides for the use of the

FAT32 specification, and the other for the use of the Microsoft logo.  PDIC requires discovery of Mr. Yoshida and the licenses between Fuji and Microsoft.

      11.      With respect to the licenses, Mr. Yoshida states

> Attached as Exhibit A to the declaration of Christopher Higgins ("Higgins Declaration") is a license with Microsoft that FUJIFILM utilized to include the FAT32 file format in the Accused FUJIFILM Digital Camera Products.  In order to utilize the FAT32 file format, a license from Microsoft is required.  Microsoft granted a royalty-free license to any entity that complied with certain provisions of the license.  Higgins Declaration Ex. A.  FUJIFILM complied with such provisions and was a licensee to the FAT32 license, which allowed FUJIFILM to incorporate the FAT32 file format shown in the Accused FUJIFILM Digital Camera Products. *Id.*

(D.I. 436 at ¶5).  There are a number of inconsistencies in the above statement for which discovery is necessary.  For example, the license cited by Defendants is published by Microsoft at: http://msdn.microsoft.com/en-us/library/gg463080.aspx.  The complete Microsoft statement on the website establishes a significant limitation on licensing of FAT32 that appears fully applicable here and demonstrates that neither Defendant is actually licensed by Microsoft.  Microsoft underscores the license limitation as follows:

> Note: The download license agreement permits you to use the Microsoft EFI FAT32 File System Specification only in connection with a firmware implementation of the Extensible Firmware Initiative Specification, v. 1.0. If you plan to implement the FAT32 File System specification for other purposes, you must obtain an additional license from Microsoft.  For example, you must obtain an additional license in order to create a file system **for reading or reading and writing FAT32 in digital cameras recording to flash media**, in computer operating systems reading and writing internal/external hard disks or flash media, or in set-top boxes reading FAT-formatted media.  To obtain this additional license, see the Microsoft Intellectual Property Licensing page.

(http://msdn.microsoft.com/en-us/library/gg463080.aspx) (emphases supplied).  A copy of the image of the preface to the license is attached as Exhibit 4.

      12.      It appears that the license relied upon by Mr. Yoshida is a limited license that does not apply to for example, "creat[ing] a file system **for reading or reading and writing**

4

**FAT32 in digital cameras recording to flash media**, in computer operating systems reading and writing internal/external hard disks or flash media, or in set-top boxes reading FAT-formatted media," which is precisely what Fuji is purporting to do.

13. There is a further inconsistency between Mr. Yoshida's assertions and actual facts requiring exploration of in discovery. Mr. Yoshida states:

> For example, in the FinePix F30 digital camera product, the following files associated with the Microsoft FAT32 file format were included:
>
> ```
> fsysDosFat.h
> fsysDosFatAPI.c
> fsysDosFatProc1.c
> fsysDosFatProc2.c
> fsysFormat.c
> fsysLib.c
> ```
>
> These files contain the necessary code that formats captured image files to permit a seamless exchange of data between FUJIFILM cameras and Microsoft Windows computers. Exhibit B of the Higgins Declaration includes the contents of these source code files.

(D.I. 436 at ¶ 7).

14. The issue for discovery, which requires the deposition of Mr. Yoshida as well as obtaining other documents, is that Fuji has not provided the complete source code for the files. Higgins' Exhibit B provides a certain amount of information, but not a complete code. More importantly, the files are clearly not Microsoft files. Higgins' Exhibit B demonstrates that Microsoft is never referenced, but the files are Fuji proprietary implementations for file input/output. Higgins Exhibit B has the notations "`Copyright(C) 2005-2006 by FUJI PHOTO FILM Co.,Ltd,`" which clearly demonstrates that the files are Fuji proprietary implementations of their own process to interface with the file allocation architecture. It is entirely unclear what Mr. Yoshida means by the statement that these files are "associated with the Microsoft FAT32 file format." Mr. Yoshida's statement that "These files contain the necessary code that formats

5

captured image files to permit a seamless exchange of data between FUJIFILM cameras and Microsoft Windows computers" appears to be misleading.  The listed files are not designed for "Microsoft Windows computers," but are designed to be used by any computers and any operating system.  The act of formatting a media for FAT is not a FAT standard.  For example, there exists many ways to format a media with the FAT specification all of which could be compliant to the FAT architecture but are different in nature.   In the case of Mr Yoshida's files, it is unclear where these files are targeted towards the host computer or the camera.  Since the cameras do not use a Microsoft operating system and the reference to "dos" in the file path of the files leaves one to believe that this code is intended for the host computer, but the matter requires discovery.

      15.  Mr. Yoshida further states that

> All Accused FUJIFILM Digital Camera Products passed Microsoft compatibility tests so that the Microsoft Windows logo could be displayed on each such product.  Attached at Exhibit C to the Higgins Declaration is an exemplar Windows Logo Agreement between FUJIFILM and Microsoft Corporation. Attached as Exhibit D to the Higgins Declaration are excerpts from exemplary FUJIFILM User Manuals for the FUJIFILM Accused Products, which display the "Designed For Microsoft Windows" logo.

(D.I. 436 at ¶ 8).  He then adds that every "Accused FUJIFILM Digital Camera Product was subjected to, and passed, the Microsoft WHQL (Windows Hardware Quality Lab) test.," and describes the lab tests.

      16.    The issue here is that Fuji is not using any Microsoft technology or product.  The certification means only that a company's own technology meets certain quality standards and can work with Microsoft products – not that it includes any Microsoft technology or "Microsoft Offerings."  Thus, Microsoft explains the certification process a follows:

> Windows hardware certification (aka Windows Logo Program for Hardware or WHQL) helps **you build products** that customers trust and want to buy.  If you have new or updated drivers, systems, or peripheral hardware that you want

> available for Windows, then you must certify them.  When you certify your products for Windows, you help create high-quality, end-to-end hardware experiences.

(http://msdn.microsoft.com/en-us/windows/hardware/gg463010.aspx) (emphases supplied).

Discovery will prove that the certification in fact does not indicate any Microsoft Offering.

17. Mr. Yoshida further states with respect to the testing for certification that:

> 12.  As part of the WHQL testing, Microsoft provided to FUJIFILM certain catalog files (.cat files) for inclusion in each Accused FUJIFILM Digital Camera Product.  These files were accessible to anyone that purchased such a product during the time period 2004-2007.  For example, the FUJIFILM FinePix F30 digital camera product includes many .cat files.  One example of a .cat file included with the FinePix F30 digital camera product is the file "u4cb010a.cat."  Without this .cat file, the camera could not connect to a Windows computer.

(D.I. 436 at ¶ 12).

18. Discovery is required with respect to the above statements, because the statements are neither explained nor supported by any record.  Specifically, it is not apparent what are the alleged "certain catalog files (.cat files) for inclusion in each Accused FUJIFILM Digital Camera Product" referenced in the declaration.  Normally, a catalog (.cat) file is to be included on the distribution media of a device/driver.  Microsoft states that "A digitally-signed catalog file (*.cat*) can be used as a digital signature for an arbitrary collection of files.  A catalog file contains a collection of cryptographic hashes, or *thumbprints*. Each thumbprint corresponds to a file that is included in the collection." ( http://msdn.microsoft.com/en-us/library/windows/hardware/ff537872(v=vs.85).aspx).  Microsoft has further stated that:

> When a driver package is submitted to Microsoft for digital signing, WHQL provides a catalog file for the driver package after WHQL has tested and assigned digital signatures to the package.

(http://msdn.microsoft.com/en-us/library/windows/hardware/ff547502(v=vs.85).aspx).  All this means is that, upon Defendant certifying its own proprietary driver(s) under the Microsoft standard, Microsoft provides a file that identifies that the driver certification.  Discovery is

7

required to determine whether such .cat files are a Microsoft Product, which is defined as "any past, present, or future technology, software, product, equipment, method, or service ("Offering") of Microsoft or any Microsoft Released Party."

19.    Discovery is required of the following statement:

> 13.  All Accused FUJIFILM Digital Camera Products include an executable file to install certain Microsoft-provided drivers.  For example, in the FinePix F30 digital camera, this file is named "WindowsXP-KB830363-x86-ENU.exe."  This file is provided by Microsoft and is a critical hardware compatibility file.

(D.I. 436 at ¶ 13).  Mr. Yoshida makes the statement that "WindowsXP-KB830363-x86-ENU.exe" was provided by Microsoft and is included in the Fuji cameras, but not a single document supports that statement, and it is unclear how that file allegedly inside the cameras interacts with any Microsoft system or component.  "KB830363" is a common naming scheme from Microsoft which stands for Knowledge Base article number 830363, it is documented in Microsoft at: http://support.microsoft.com/kb/830363.  The article cites a bug in the Microsoft Windows offering with an available solution that can be downloaded and installed.  The problem is associated with the Microsoft DirectShow library and certain functionality therein.

20.    Discovery, by way of a deposition of Mr. Yoshida and other persons at Fuji are required to determine whether any of the alleged FAT32, .cat and "WindowsXP-KB830363-x86-ENU.exe" files are Microsoft "Offerings" as defined in the PDIC-Microsoft Agreement.  That Agreement defines a Microsoft Offering as follows:

> (1) any past, present, or future technology, software, product, equipment, method, or service ("Offering") of Microsoft or any Microsoft Released Party, including without limitation any past, present or future Offering that is made by or for, designed by or for, provided to, provided by or for, obtained from, obtained by or for, purchased from, purchased by or for, sold or offered for sale to, sold or offered for sale by or for, imported or exported to, imported or exported by or for, used by or for, distributed to, distributed by or for, leased to, leased by or for, hosted to, hosted by or for, licensed from, or licensed by or for Microsoft or any Microsoft Released Party….

(D.I. 442). Specifically, the alleged FAT32 files do not appear to be Microsoft-related at all, except that Fuji has created proprietary drivers that will work with various file allocation tables, including FAT32. Fuji's proprietary program, however, is not "technology, software, product, equipment, method, or service ("Offering") of Microsoft or any Microsoft Released Party." It would appear that all the referenced files may be <u>Fuji's</u> "technology, software, product, equipment, method, or service," which Fuji built and designed to be <u>used with</u> Microsoft systems. Similarly, any files associated with the Microsoft certification appear to be <u>Fuji's</u> "technology, software, product, equipment, method, or service," which Fuji built and designed to meet Microsoft certification requirements so that Fuji's systems could be <u>used with</u> Microsoft systems.

21.     It is particularly necessary in the discovery to determine what, if any, Microsoft technology, software, product, equipment, method, or service (or "Offering") is being used by Fuji, because the Fuji declaration appears to confuse Fuji technologies that are designed to be used with Microsoft technologies with what is actually a Microsoft technology, software, product, equipment, method, or service (or "Offering").

22.     Finally, discovery is necessary to address where and how the alleged files or technologies described in the declaration are used. It is underscored that Defendant's declaration never relates the alleged files or technologies with any of the systems accused of infringing any of the patent claims. Defendant's declaration merely states that Defendant's products have somewhere in their repertoire of files and technologies the files or technologies identified in the declaration. Nowhere does the declaration tie those files or technologies to the systems accused of infringement.

23.     Thus, the term "Microsoft Product" in the PDIC- Microsoft Agreement includes:

> (2) any past, present or future combination, hybrid or aggregation that incorporates or uses any Offering described in 1.8(1) above, including without limitation any use with or combination, hybrid or aggregation with any past, present or future third-party Offering.

The plain and ordinary meaning of this language refers to combinations, aggregations or hybrids used with a "third-party Offering." Thus, even if a "combination, hybrid or aggregation" incorporates or uses a Microsoft Offering it is important to determine whether and how that mixture has any relationship to the particular third-party Offering accused of infringement. Even if one portion of a Defendant's system is licensed as a Microsoft Product, that does not mean that all portions of a Defendant's system are licensed or are Microsoft Products. The exact relationship between a licensed Microsoft Product, and the accused products or systems must be explored in discovery.

## DECLARATION OF CURT BEHREND (D.I. 438)

24. Mr. Behrend's declaration presents issues for discovery that are essentially the same as those identified with respect to Mr. Yoshida's declaration. In particular, Mr. Behrend appears to equate HP's technologies which are designed to interoperate with Microsoft systems as a Microsoft technology. This requires exploration in discovery, because, as noted previously, the PDIC – Microsoft Agreement protects Microsoft technology, software, product, equipment, method, or service (or "Offering"), or a third-party's combination, hybrid or aggregation with a Microsoft "Offering," but the Agreement never mentions and does not license third-party technologies simply because they are designed to work with Microsoft Offerings.

25. Mr. Behrend's declaration also presents issues for discovery that are essentially the same as those identified with respect to Mr. Yoshida's declaration, because even if Defendant's products did have some part or a component that was a combination, hybrid or aggregation with a Microsoft "Offering," that does not mean that the component(s) accused of

10

infringement were such combination, hybrid or aggregation with a Microsoft "Offering." The relationship of the alleged combination, hybrid or aggregation with a Microsoft "Offering" to the accused system has to be explored in a deposition of Mr. Behrend and potentially by other discovery.

26. Thus, Mr. Behrend states:

> 5. Since the late 1990s, HP's inkjet printers had to undergo Windows Hardware Quality Labs ("WHQL") testing before they could be certified as a Microsoft Windows compliant products. WHQL testing is Microsoft's testing process, which involves two basic steps. First, Microsoft designs a set of features and functionalities that the HP inkjet printers must have to be able to operate seamlessly with Microsoft's operating systems. When HP designs its inkjet printers, it must include the features and functionality required by Microsoft. Second, HP must perform a series of tests on its inkjet printers before releasing them for sale. HP submits the results of those tests to Microsoft for review. Only after HP's inkjet printers pass WHQL testing are they certified for use with a Microsoft Windows operating system. HP has employees who are responsible for performing WHQL testing on HP's products.

(D.I. 438 at ¶ 5). This paragraph does not identify any HP combination, hybrid or aggregation with a Microsoft Offering, but identifies only an HP system that meets Microsoft interoperability requirements.

27. Next Mr. Behrend states:

> HP has employees who create software and drivers for HP's inkjet printers. This team uses the Microsoft Windows Software Development Kit ("SDK"), along with the Microsoft Device Development Kit ("DDK"), to create software and drivers for HP's inkjet printers. The Windows SDK allows HP to develop printer software and the DDK allows HP to create drivers that work with the Windows operating systems. HP has been using the Windows SDK and DDK to create software and drivers since at least 2004. Since at least 2004, HP has also used the Microsoft Windows installer (also called an "MSI installer"), which is a Microsoft-provided software component used for the installation, maintenance and removal of HP software on Microsoft Windows computers.

(D.I. 438 at ¶ 7). In this case, discovery is required, because it appears that Mr. Behrend is confusing HP products <u>developed with</u> Microsoft technologies as being <u>a</u> Microsoft "technology, software, product, equipment, method, or service ("Offering")." Yet, a product made using

11

Microsoft technology does not convert the product into a Microsoft product.  If that were the case, then any document created in Microsoft Word would automatically become a Microsoft Product, because the document was created using a Microsoft Product.  Such an interpretation would directly contradict the plain language of the PDIC – Microsoft Agreement.  Thus, discovery is necessary to ascertain whether the products made by use of the Microsoft development tools fall within the definition of "combination, hybrid or aggregation that incorporates or uses any [Microsoft] Offering described in 1.8(1) above, including without limitation any use with or combination, hybrid or aggregation with any past, present or future third-party Offering."

> 28. Next Mr. Behrend states:
>
> When the printer drivers for HP's inkjet printers pass WHQL testing, Microsoft creates a digitally signed certification file, called a Microsoft Catalog file (or ".cat" file after their file extension). These Microsoft .cat files are sent by Microsoft to HP for inclusion with HP's inkjet printers. An example of the Microsoft .cat files shipped with the HP Officejet C6180 All-in-One Printer is shown in the screenshot below. The .cat files shown highlighted in blue in were provided by Microsoft to HP for use with several HP inkjet printer models.

(D.I. 438 at ¶ 8).  As was the case with similar statement by Mr. Yoshida, discovery is required, because a Microsoft WHQL system may automatically provide a .cat file, but it is only an identification that HP's system was certified.  As Mr. Behrend points out, the consequence of having a .cat file is that:

> These Microsoft .cat files allow the HP Officejet C6180 All-in-One Printer to be seamlessly plugged into and operated with a PC running a Microsoft operating system (in this example, Windows XP or Windows Vista). Without these .cat files, an error message would appear on the PC monitor when the printer is plugged into the computer, warning the user that the printer may not be Microsoft compatible.

In other words, the .cat file merely allows interoperability with a Microsoft product, but is not a Microsoft Product itself.

29.     Thus, discovery is required to determine whether such .cat files – which merely identify a certification – are a Microsoft Product, which is defined as "any past, present, or future technology, software, product, equipment, method, or service ("Offering") of Microsoft or any Microsoft Released Party."

DECLARATION OF PAOLO FONTANI (D.I. 439)

30.     Mr. Fontani's declaration presents issues for discovery that are essentially the same as those identified with respect to Mr. Yoshida's and Mr. Behrend's declarations.  Mr. Fontani again refers to HP's WHQL testing to have HP products be certified as a Microsoft Windows compliant devices, and the inclusion of the .cat files.  Thus, his declaration raises the same discovery issues as did the prior declarations.

31.  Mr. Fontani adds that:

> My understanding is that Microsoft also maintained the HP device drivers and Microsoft .cat files for HP's digital cameras on its own servers, so that users could download the drivers and .cat files for the HP cameras without the need for the product CD.

Discovery is required as to the basis of Mr. Fontani's "understanding."  There are no documents or other evidence, much less objective evidence, that supports the statement, or the implications of such a statement.

32.     Mr. Fontani then states:

> The HP digital cameras also incorporated the Microsoft FAT32 File System. "FAT" is short for File Allocation Table.  Microsoft's FAT32 File System is a computer file system architecture that is well-suited for data exchange between computers and peripheral devices, like digital cameras.  HP's digital cameras incorporate the Microsoft FAT32 File System to allow users to view and download their photos from the camera onto a Microsoft Windows PC when the camera is plugged into the PC.  The Microsoft FAT32 File System is implemented in the firmware running on the HP digital camera, as well as on the Microsoft Windows PC itself.

(D.I. 439 at ¶ 11).  As was the case with the declaration of the other Defendants' declarants, discovery is required of this assertion, because it appears to be misleading and inaccurate, as well as unsupported.  There is no evidence, such as a document or source code, that identifies any "Microsoft FAT32" system in any HP product.  Discovery is necessary of Mr. Fontani and HP to determine whether there is any "Microsoft FAT32" file in any HP product, where it is found and how it is used.

### DECLARATION OF BRADLEY R. LARSON (D.I. 440)

33.     Mr. Larson's declaration presents issues for discovery that are essentially the same as those identified with respect to the declarations of Messrs. Yoshida, Behrend and Fontani.  In fact, Mr. Larson's declaration essentially repeats the declaration of Mr. Fontani, and, thus, all the discovery issues raised with respect to Mr. Fontani also apply to Mr. Larson.

### DECLARATION OF JIMMIE SATO (D.I. 441

34.     Mr. Sato states that "the vast majority of Snapfish users accessed Snapfish through the Microsoft Internet Explorer Web browser, so it was critical that Snapfish be able to operate seamlessly with Internet Explorer."  Discovery is required of this statement, because Mr. Saito does not provide any basis for his conclusory opinion.  Further, Mr. Sato's declaration inferentially admits that other web browsers, such as presumably Safari and Firefox, were also utilized by users.

35.     Even if some percentage of users used the Internet Explorer, discovery is required to ascertain how it is that HP views that fact to mean that Snapfish is a Microsoft Product.  HP's first step in proving that Snapfish is a Microsoft Product is that HP must show that Snapfish is a "combination, hybrid or aggregation that incorporates or uses any [Microsoft] Offering …" Merely because users may use IE does not mean that Snapfish itself is a "combination, hybrid or

aggregation that incorporates or uses any [Microsoft] Offering …" Discovery is required to demonstrate that IE is a vehicle for <u>using</u> Snapfish, and not part of Snapfish.

36. Mr. Sato next states that "much of Snapfish's supporting infrastructure ran on Microsoft Windows servers." Discovery is required to determine what is meant by the term "Microsoft Windows servers," what is meant by the term "much" as used by Mr. Sato, and what is being referenced as the "supporting infrastructure." Mr. Sato made a number of outright conclusions without any documentary or other evidentiary support. Discovery is also required to determine the basis for HP's assertion that Snapfish is a "combination, hybrid or aggregation that incorporates or uses any [Microsoft] Offering …" Merely because Snapfish is made available via a Microsoft web server, that does not mean that Snapfish itself is a "combination, hybrid or aggregation that incorporates or uses any [Microsoft] Offering …" Discovery is required to demonstrate that any alleged Microsoft Windows server is merely a vehicle for providing Snapfish, and not part of Snapfish itself.

37. Mr. Sato next states that "Snapfish has used Microsoft's ActiveX technology as the primary software application to upload images and photos" but only with respect to those users who used IE. Discovery is required to determine how ActiveX was used, and the extent to which it was used. All the other facts asserted by Mr. Sato will then have to be explored.

Executed this 22nd day of May, 2014, in Wilmington, Delaware.

                                              Respectfully Submitted,

                                              */s/ George Pazuniak*

                                              George Pazuniak