**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PRINCETON DIGITAL IMAGE CORPORATION,<br><br>                    Plaintiff,<br><br>     v.<br><br>HEWLETT-PACKARD, et al.;<br><br>                    Defendants.<br><br>AND RELATED COUNTERCLAIMS | Civil Action No. 1:12-cv-779 (RJS)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON
SETTLEMENT AGREEMENT BETWEEN PLAINTIFF AND MICROSOFT CORP.**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 1

    A. PDIC Misstates Washington Law, Which Does Not Permit the Use of Extrinsic Evidence to Vary the Language of a Contract........................................ 1

    B. PDIC's Opposition Rests on Purported "Limitations" that Are Contrary to the Plain Language of the Agreement.................................................................. 3

        1. The Term "Microsoft Products" Is Not Limited to Components or Instrumentalities Accused of Infringement................................................. 3

        2. The Term "Microsoft Products" Is Not Limited to Products Made By Microsoft or to Microsoft Offerings Inside a Camera or Printer. ........ 4

    C. PDIC Did Not Raise Any Genuine Issues of Material Fact for Trial. .................... 6

        1. PDIC's Local Rule 56.1 Responses Contain No Facts Purportedly Controverting HP and FNA's Statements of Material Fact. ...................... 6

        2. PDIC Is Bound by Its Corporate Designee's "Professions of Ignorance." ................................................................................................. 7

        3. Defendants' Evidence Fully Supports Summary Judgment. ..................... 8

    D. The Court Should Reject PDIC's Request For Additional Discovery................... 8

III. CONCLUSION.................................................................................................................. 10

## TABLE OF AUTHORITIES

Page

**CASES**

*Briese Lichttechnik Vertriebs GmbH v. Langton*,
    272 F.R.D. 369 (S.D.N.Y. 2011) ................................................................................................7

*Costello v. New York State Nurses Ass'n*,
    783 F. Supp. 2d 656 (S.D.N.Y. 2011) ........................................................................................6

*Hearst Commc'ns, Inc. v. Seattle Times Co.*,
    154 Wash. 2d 493 (2005) .......................................................................................................2, 3

*Kraft v. City of New York*,
    696 F. Supp. 2d 403 (S.D.N.Y. 2010) ........................................................................................6

*Risco v. McHugh*,
    868 F. Supp. 2d 75, 86 n. 2 (S.D.N.Y. 2012) .............................................................................6

*Senno v. Elmsford Union Free Sch. Dist.*,
    812 F. Supp. 2d 454 (S.D.N.Y.2011) .........................................................................................6

*Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*,
    10 CIV. 4933 ALC GWG, 2013 WL 81263 (S.D.N.Y. Jan. 8, 2013) ........................................7

*Union Carbide Corp. v. Exxon Corp.*,
    77 F.3d 677 (2d Cir. 1996) .........................................................................................................8

*United States v. Kerik*,
    531 F. Supp. 2d 610 (S.D.N.Y. 2008) ........................................................................................7

*William G. Hulbert, Jr. and Clare Mumford Hulbert Revocable Living Trust v. Port of Everett*,
    159 Wash. App. 389 (2011) .......................................................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 30(b)(6) .....................................................................................................................7

S.D.N.Y. Local Rule 56.1 .................................................................................................................6

I.      INTRODUCTION

PDIC's Answering Brief ("Opp.") is a work of sophistry. The brief is replete with statements about what is "plain," "clear" and "cannot be disputed," but it contradicts the actual language of the PDIC-Microsoft Agreement and rests on false logic at every turn. Rather than addressing how the Agreement <u>as written</u> applies to the facts, PDIC invents "limitations" that are nowhere in the Agreement and tries to manufacture "disputes" based on declarations from experts, who offer irrelevant conjecture about the accused products, and from PDIC's lawyers, who offer a self-serving portrayal of the negotiations with Microsoft that is equally irrelevant under the "Entire Agreement" clause of Section 9.14 and governing law. The Court should reject PDIC's attempt to modify the Agreement based on behind-the-scenes "intent."

At the same time, PDIC makes significant concessions that mandate summary judgment. PDIC concedes that "the Microsoft Agreement is broad," that it "says what it says" and that it should not be read contrary to its plain language. PDIC also concedes that HP and FNA are "Microsoft Third Parties" and therefore are third-party beneficiaries entitled to enforce the Agreement's releases, licenses and covenants. At the end of the day, PDIC fails to identify any genuine dispute of material fact for trial, given the Agreement's breadth. Nor has PDIC offered any legitimate basis for dragging this lawsuit out with additional discovery. The Court should grant this motion and enter judgment for Defendants.

II.     ARGUMENT

    A.   **PDIC Misstates Washington Law, Which Does Not Permit the Use of Extrinsic Evidence to Vary the Language of a Contract.**

Contrary to PDIC's argument, Washington and New York law are in accord on the material legal points supporting Defendants' motion. PDIC argues that Washington law requires the Court to look at "the surrounding circumstances and extrinsic evidence" to determine the meaning of specific language in the contract. Opp. at 8. Not true. Courts in Washington, as in

New York, look to extrinsic evidence only when the meaning of words in a contract cannot be determined from the contract itself.  *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash. 2d 493, 503-04 (2005) ("when interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used").  *Hearst* also holds that Washington courts will "generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent."  *Id.* at 504.  And finally, Washington courts "do not interpret what was intended to be written but what was written."  *Id.*

Here, PDIC admits the Agreement is "not ambiguous" (Opp. at 8-9), uses "plain language" (*id.* at 4), "leaves nothing to imagination" (*id.*) and "says what it says" (Dkt. No. 457, 461).  Defendants agree—the integrated Agreement says what it says in plain, unambiguous language.  Despite this, PDIC presents a unilateral, self-serving and hearsay account of its purported "negotiations" with Microsoft through the declaration of one of its lawyers, Michael Botts, and tries to argue the Agreement was intended to protect only Microsoft, not Defendants.  Opp. at 9.  PDIC's attempt to vary the plain meaning of the Agreement is precisely why extrinsic evidence is not permitted.  *William G. Hulbert, Jr. and Clare Mumford Hulbert Revocable Living Trust v. Port of Everett*, 159 Wash. App. 389, 400 (2011) (extrinsic evidence of subjective intent as to a contract's meaning inadmissible to add to the terms of a fully integrated contract).

PDIC's inadmissible extrinsic evidence is directly at odds with the plain language of the Agreement, which explicitly protects "Microsoft's customers" (Section 1.10) by granting "Microsoft Third Parties" releases from PDIC's infringement claims (Section 3.2), licenses to PDIC's patents (Section 4.2), covenants not to sue (Section 5.2), and explicitly making them third-party beneficiaries "entitled to enforce the licenses, releases or covenants without the joinder of Microsoft" (Section 5.3).  PDIC would wipe away these express provisions in favor of

its new argument that "neither PDIC nor Microsoft intended the Agreement to protect anyone other than Microsoft." Opp. at 9.  But PDIC cannot offer extrinsic evidence to "vary, contradict or modify the written word." *Hearst*, 154 Wash.2d at 503 (affirming summary judgment based on "plain terms" of agreement).

   **B.** **PDIC's Opposition Rests on Purported "Limitations" that Are Contrary to the Plain Language of the Agreement.**

  PDIC argues Defendants have ignored "two main limitations" that PDIC asserts narrow the definition of "Microsoft Products." Opp. at 3. But neither of these so-called "limitations" appears anywhere in the Agreement. PDIC invented them to try to avoid summary judgment.

   **1.** **The Term "Microsoft Products" Is Not Limited to Components or Instrumentalities Accused of Infringement.**

  Contrary to PDIC's primary argument, Defendants have not "read out" any limitation from the Agreement. Opp. at 2. Defendants agree that a product must be a "combination, hybrid or aggregation" (hereinafter "C/H/A") to qualify as a "Microsoft Product." But PDIC concedes that "[a] camera, printer or any similar instrumentality is a combination of multiple components and functionalities." Opp. at 4. And in amending its infringement contentions to remove HP personal computers last July, PDIC acknowledged that those HP PCs qualify as "Microsoft Products," which required PDIC to "withdraw any and all infringement contentions related to the Licensed IP that related in whole or in part to a Microsoft Product…." HP Ex. 1, p. 5. There is no reason why HP's PCs qualify as "Microsoft Products" but HP's and FNA's cameras and printers do not. Those cameras and printers combine components and functionalities with Microsoft "Offerings." That is all the Agreement requires.

  PDIC simply invents a limitation that the accused products cannot be "Microsoft Products" unless "the specific 'combination, hybrid or aggregation' <u>that is accused of infringement</u> here incorporated or used Microsoft Offerings." Opp. at 4 (emphasis added). The

Agreement, however, does not limit "Microsoft Products" to a C/H/A "that is accused of infringement." On the contrary, Section 1.8(2) applies to <u>any</u> C/H/A that "incorporates or uses any Offering described in 1.8(1) above." And it further includes "any use with or combination, hybrid or aggregation with any past, present or future third-party Offering." HP Ex. 1, § 1.8(2).

Given the plain language of Section 1.8, PDIC's effort to focus on "the express intentions of the original parties' [sic] to the Agreement" (Opp. at 16) is irrelevant. The integration clause (Section 9.14), the construction clause (Section 9.11), and governing law all prohibit PDIC's attempt to rewrite the Agreement. PDIC's argument is also contrary to logic. Assuming the parties intended to ensure that Microsoft would never "'hear from PDIC again, either directly or indirectly'" (Opp. at 10, quoting PDIC Ex. 1), that intent would be best served by the plain meaning of Section 1.8, not by PDIC's reinterpretation. Under Section 1.8 as written, Microsoft should never again hear from or about PDIC, because any third-party C/H/A that incorporates or uses a Microsoft Offering is immune from infringement claims. PDIC's rewriting of Section 1.8, in contrast, would inject uncertainty about whether a Microsoft Offering may be implicated by a PDIC claim, thereby creating third-party questions or demands of Microsoft.[1]

### 2. The Term "Microsoft Products" Is Not Limited to Products Made By Microsoft or to Microsoft Offerings Inside a Camera or Printer.

PDIC's second "limitation" is contrary to the plain language of several provisions of the Agreement. PDIC claims that "third-party 'products' are not protected" and that "neither PDIC

---

[1] PDIC is wrong to suggest that it has excluded Microsoft Offerings from its infringement claims, by focusing on "components and instrumentalities" that "do not involve Microsoft technologies." Opp. at 17. In truth, PDIC has broadly accused hundreds of products solely by model number, and its infringement contentions do not exclude Microsoft technologies. Higgins Reply Decl., Ex. A. Moreover, even if the Court were to consider extrinsic evidence about the scope of the Agreement (which it should not), PDIC's Settlement Agreement with Xerox International Partners ("XIP") would be most instructive. *Id.*, Ex. B. That Agreement was signed June 28, 2013, the same date as the Microsoft Agreement. It specifically releases XIP's customers only from PDIC claims based on XIP products. Ex. B, § 2.3; s*ee also* § 2.4.

nor Microsoft intended the Agreement to protect anyone other than Microsoft." Opp. at 4, 9.  As demonstrated above, PDIC's statements contradict Sections 1.8(2), 1.9, 3.2, 4.2, 4.3, 5.2, 5.3 and 9.11, all of which explicitly protect third parties like HP and FNA.  Nor is there any genuine factual dispute that HP's and FNA's accused products incorporate or use Microsoft technologies.

For example, as Defendants demonstrated, the accused products write and store files to memory in a FAT32 format that is owned by Microsoft and used by HP and FNA under license. **HP**: Fontani Decl. ¶ 11, Larson Decl. ¶ 12, Behrend Decl. ¶ 11, HP Ex. 12; **FNA**: Yoshida Decl. ¶¶ 5-7, FNA Exs. A & B.  The software code that implements FAT32 is stored inside the accused products and executes on the products.  **HP**: *Id.*; **FNA**: Yoshida Decl. ¶¶ 5-7.  Each accused product thereby directly "incorporates or uses" a Microsoft "Offering."  PDIC has produced no evidence to contradict Defendants' evidence about their use of the Microsoft FAT32 technology.  Summary judgment is warranted on this basis alone.

PDIC also cannot dispute that Microsoft provided Catalog (or ".cat") files, which Defendants include with the accused products to permit them to connect to a computer using a Microsoft Windows operating system.  **HP**: Fontani Decl. ¶¶ 6-10, Larson Decl. ¶¶ 7-11, Behrend Decl. ¶¶ 8-10; **FNA**: Yoshida Decl. ¶12, FNA Ex. E.  Rather than raise a dispute, PDIC asserts that Microsoft .cat files are "installed and executed on a PC; *not* the cameras nor printers." Opp. at 18.  But Section 1.8 requires only that a third-party C/H/A "incorporates or uses" a Microsoft Offering—nothing in that section requires the Microsoft Offering be physically inside a product.  There is no dispute the accused products "use" the Microsoft .cat files to allow the accused products to be operated with a Windows PC.  **HP**: Fontani Decl. ¶ 8, Larson Decl. ¶ 9, Behrend Decl. ¶ 9; **FNA**: Yoshida Decl. ¶12, FNA Ex. E.

PDIC further failed to rebut the evidence offered by FNA that its products incorporate and use "Microsoft-provided drivers" and the Microsoft Windows Media Player.  Yoshida Decl.

- 5 -

¶¶ 13-14.  PDIC does not dispute that the executable file used to install the drivers "is provided by Microsoft."  *Id*.  That the source code may be "proprietary to Fujifilm" (Opp. at 19) does not alter the fact that the drivers incorporate and use Microsoft technology.  The Agreement does not require that Microsoft itself write software or make components in accused third-party products—it is enough that the products incorporate or use Microsoft technology.  PDIC also has offered no response regarding the Microsoft Windows Media Player in FNA products (Opening Br. at 18).  Summary judgment should be granted for that reason alone.  *Kraft v. City of New York*, 696 F. Supp. 2d 403, 425 (S.D.N.Y. 2010).

  **C.**  **PDIC Did Not Raise Any Genuine Issues of Material Fact for Trial.**

    **1.**  **PDIC's Local Rule 56.1 Responses Contain No Facts Purportedly Controverting HP and FNA's Statements of Material Fact.**

  In order to controvert Defendants' Local Rule 56.1 Statements, PDIC was required to "cite to evidence that would be admissible at trial to show that the controverted statement is, in fact, in dispute."  *Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011).  But PDIC made only baseless objections, which is not enough to avoid summary judgment.  *See Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 458 n. 1 (S.D.N.Y.2011) ("Responses…which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact."); *Risco v. McHugh*, 868 F. Supp. 2d 75, 86 n. 2 (S.D.N.Y. 2012) (same).

  For example, Paragraph 18 of HP's Rule 56.1 Statement states:  "Each accused HP product qualifies as a 'Microsoft Product' under Section 1.8, because each is a combination, hybrid, or aggregation that 'incorporates or uses' a Microsoft 'Offering.'"  Dkt. No. 443, p. 4.  PDIC offered no evidence to dispute this material fact, but instead objected to HP's statement as an "improper legal conclusion" and because several HP witnesses purportedly were not disclosed during discovery.  Dkt. No. 461, p. 7.  PDIC used the same boilerplate objections in response to

HP's Paragraphs 19 through 31 (Dkt. No. 461, pp. 7-10) and to FNA's similar Rule 56.1 statements (Dkt. No. 458).  PDIC's so-called objections, however, are meritless.  None of Defendants' statements constitute improper legal conclusions, but rather are factual statements about how the accused products incorporate or use Microsoft "Offerings."  And as demonstrated below, HP properly disclosed its witnesses, several as early as May 2011.

### 2. PDIC Is Bound by Its Corporate Designee's "Professions of Ignorance."

PDIC cannot raise a disputed issue of fact contrary to its Rule 30(b)(6) designee's testimony that PDIC has no position about whether any of the accused products fall within the scope of the Agreement.  HP Ex. 2, Meagher Depo.  It is well-settled in this Court that PDIC is bound by the "professions of ignorance" of its corporate designee.  *Briese Lichttechnik Vertriebs GmbH v. Langton*, 272 F.R.D. 369, 376 (S.D.N.Y. 2011) ("as 30(b)(6) witnesses, Mr. and Mrs. Briese bound the defendant company by their testimony, and thus to the extent that they had no answer to specific factual inquiries, the Briese entity is bound by that profession of ignorance"); *Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*, 10 CIV. 4933 ALC GWG, 2013 WL 81263, at *7 (S.D.N.Y. Jan. 8, 2013) (same).  PDIC also is wrong in claiming that Defendants' Rule 30(b)(6) notice "did not include any topic related to the Microsoft Agreement" (Opp. at 23), when the notice contained at least three topics related to the Agreement, including Topic 16: "All efforts to commercialize, license, or enforce the PDIC Patents, including any settlement or license negotiations and legal disputes involving the PDIC Patents."  Dkt. No. 455-3, p. 5.  The non-responses of PDIC's Rule 30(b)(6) witness regarding the Agreement provide independent grounds for summary judgment.[2]

---

[2] Notably, PDIC did not designate its lawyers as deponents in response to Defendants' Rule 30(b)(6) notice.  Despite this, one of PDIC's lawyers, Mr. Botts, now attempts to testify about the negotiations between PDIC and Microsoft.  The Court should reject his testimony for the reasons discussed above and because the New York Code of Professional Responsibility

- 7 -

### 3. Defendants' Evidence Fully Supports Summary Judgment.

Defendants' evidence is more than sufficient to support summary judgment. PDIC first tries to misconstrue the evidence Defendants rely on by calling it "merely files produced using Microsoft technology...not Microsoft Offerings per se." Opp. at 4-5. On the contrary, the software files Defendants incorporate into their products are provided directly by Microsoft. HP and FNA relied on the products themselves—the best evidence of how they operate—and sworn witness testimony from the HP and FNA personnel who designed and built the products. This is more than sufficient for summary judgment. *Union Carbide Corp. v. Exxon Corp.*, 77 F.3d 677, 681-82 (2d Cir. 1996) (declarations "more than sufficient to support summary judgment").

### D. The Court Should Reject PDIC's Request For Additional Discovery.

For the following reasons, the Court should reject PDIC's request for further discovery.

First, PDIC's request for additional discovery is premised on the same misinterpretation of the Agreement discussed above—that is, that the term "Microsoft Products" is limited to components of an accused product that are accused of infringement. *See, e.g.*, Pazuniak Decl. ¶¶ 22, 23, 25. Under a correct reading of the Agreement, the material facts regarding the accused products are undisputed and no further discovery is necessary. Section II.B and Op. Br. at 4-18.

Second, PDIC was not diligent in pursuing discovery during the fact discovery period. *See* Opening Br., pp. 18-21. PDIC does not even try to excuse its lack of diligence.

Third, PDIC's claim that Defendants failed to produce the "source code or other technical documents" that support this motion (Opp. at 4) is flat wrong. FNA produced more than 2.5 million pages of documents, including the documents cited in Defendants' motion. *See also* Dkt. No. 462, p. 2. PDIC also is wrong in seeking further discovery on grounds that it previously lacked access to three FNA exhibits (Opp. at 22): FNA Exhibit A is a publicly available

---

"generally forbids lawyers from acting as advocates and witnesses in the same matter." *United States v. Kerik*, 531 F. Supp. 2d 610, 615-16 (S.D.N.Y. 2008).

- 8 -

Microsoft license that FNA cited merely to show that the FAT32 file system is a Microsoft "Offering," which PDIC concedes.  Dkt. No. 458, p. 5 (Response to Statement No. 8).  FNA Exhibit B contains excerpts of source code files that PDIC and its expert inspected in June 2013.  *See* Higgins Decl. ¶ 11.  And FNA Exhibit C is a sample Windows Logo Agreement between Microsoft and Fujifilm, which FNA cited merely to show that Fujifilm has permission to display the Windows Logo on its products.  For its part, HP produced more than 420,000 pages of technical documents and source code, including more than 230 documents that refer to HP's use of the Microsoft FAT32 file system.  Cunningham Decl. ¶ 13.

Fourth, PDIC's claim that Defendants failed to identify (or properly identify) certain of their declarants (Opp. at 23, 25) also is wrong.  As PDIC acknowledges, HP disclosed three of its four declarants, and PDIC deposed all three of them.[3]  But PDIC did not ask those witnesses any questions about HP's use of Microsoft technology in the accused products.  And FNA designated three witnesses with knowledge of the structure, function, and operation of the accused products (which covers the use of Microsoft technology), and PDIC did not depose a single one of those witnesses.  PDIC cannot demonstrate any prejudice from Defendants' declarations in any event.  The declarations consist of straightforward factual statements that are verifiable through a review of the documents and products referenced in the declarations.

Fifth, PDIC does not need more discovery, because it does not dispute that Microsoft .cat files are used with the accused products.  Pazuniak Decl. at ¶ 18 ("Microsoft provides a file that identifies that [sic] the driver certification"); *id*. at ¶ 28.  Defendants' use of Microsoft .cat files is

---

[3] HP disclosed declarant Brad Larson in its first initial disclosure statement in May 2011 (Cunningham Supp. Decl. ¶ 3), not on the "last day of discovery."  HP disclosed Mr. Behrend on that same day.  *Id*.  HP disclosed Mr. Fontani in December 2013, more than one month before his deposition.  *Id*. ¶ 4. All three declarants were disclosed as knowledgeable about the "design, structure, function and operation" of the HP accused products—precisely the subject of their declarations.  *Id*. ¶¶ 3-4.  HP also disclosed three Snapfish employees, including the one who previously held the job Mr. Sato now holds.  *Id*. ¶ 5.  PDIC never sought their depositions.  *Id*.

one of several independent bases for summary judgment. PDIC's argument that a Microsoft .cat file somehow does not constitute a Microsoft "Offering" is a legal issue the Court can resolve without further discovery.

Sixth, neither Defendant "misled" PDIC into believing they would not assert defenses based on the Agreement. Contrary to PDIC's speculation (Opp. at 13-14), HP has never taken the position that the Agreement applies only to HP personal computers. Rather, HP specifically informed PDIC's counsel in October 2013 that HP was pursuing a license defense based on the Agreement for all HP accused products—a point PDIC does not dispute. Cunningham Decl. ¶ 15. Nor is there any basis in fact for PDIC's speculation that FNA "did not believe that its products were licensed under the Agreement." Opp. at 15. FNA has made its position clear by, among other things, amending its Answer with the Court's permission to assert licensing defenses based on the Agreement. As the Court noted during the April 3, 2014 conference, it is not in anyone's interest to conduct a patent jury trial simply because of allegedly late notice with respect to a defense. Dkt. No. 423, Hearing Tr. at 22-23. That is particularly true here, where PDIC has no legitimate claim of prejudice because it negotiated the Agreement itself.

For these reasons, the Court should deny PDIC's request for additional discovery. If the Court grants PDIC's request, discovery should be limited in time and scope, and Defendants should be permitted to depose PDIC's experts, as well as Messrs. O'Kelly, Botts, and Pazuniak. PDIC has made these lawyers fact witnesses subject to discovery.

## III.  CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening papers, Defendants request that the Court grant their motion and enter judgment in favor of Defendants in this case.

Dated:  June 3, 2014

*/s/ Sean C. Cunningham*
Sean C. Cunningham (*pro hac vice*)

sean.cunningham@dlapiper.com
Erin P. Gibson (*pro hac vice*)
erin.gibson@dlapiper.com
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA 92101
Telephone:    619-699-2700
Facsimile:    619-699-2701

Brian K. Erickson (*pro hac vice*)
brian.erickson@dlapiper.com
**DLA PIPER US LLP**
401 Congress Ave., Suite 2500
Austin, TX 78701-3799
Telephone:    512-457-7059
Facsimile:    512-457-7001

**ATTORNEYS FOR DEFENDANT HEWLETT-PACKARD COMPANY**

*/s/ Steven J. Routh (with permission)*
Steven J. Routh (*pro hac vice*)
srouth@orrick.com
LEAD ATTORNEY
Sten A. Jensen (*pro hac vice*)
sjensen@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1152 15th Street, NW
Washington DC 20005
Telephone:    202-339-8400
Facsimile:    202-339-8500

Clifford R. Michel
cmichel@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019
Telephone:    212-506-5000
Facsimile:    212-506-5151

**ATTORNEYS FOR DEFENDANT FUJIFILM NORTH AMERICA CORPORATION**

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and service on registrants.

*/s/ Sean C. Cunningham*
Sean C. Cunningham
