# Exhibit B

# DuaneMorris®

*FIRM and AFFILIATE OFFICES*

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
PALO ALTO
SAN DIEGO
BOSTON
HOUSTON
LOS ANGELES
HANOI
HO CHI MINH CITY
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
BOCA RATON
LAKE TAHOE

MEXICO CITY
ALLIANCE WITH
MIRANDA & ESTAVILLO

WESLEY W. YUAN
DIRECT DIAL: +1 713 402 3911
PERSONAL FAX: +1 713 513 5848
E-MAIL: wwyuan@duanemorris.com

*www.duanemorris.com*

July 12, 2013

**Via Email**
Steven J. Routh
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington, DC 20005

**Via Email**
Sean C. Cunningham
Partner
DLA Piper US LLP
401 B Street, Suite 1700
San Diego CA  92101-4297

Re:   *Princeton Digital Image Corporation v. Hewlett-Packard Company, et al.*
      **Case No. 12 Civ. 779 (RJS)**

Counsel:

      Enclosed please find documents Bates labeled PDIC0023077-23099. These documents are labeled "CONFIDENTIAL – ATTORNEYS EYES ONLY" under the upper tier of the protective order entered in this case.

      Sincerely,

      Wesley W. Yuan

WWY/mmb
Enclosure

DUANE MORRIS LLP

1330 POST OAK BOULEVARD, SUITE 800    HOUSTON, TX 77056-3166      PHONE: +1 713 402 3900    FAX: +1 713 402 3901
DM1\4020536.1 F4371/00001

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is effective as of June 29, 2013 (the "**Effective Date**") by and between Princeton Digital Image Corporation ("**PDIC**," as further defined below), a corporation organized and existing under the laws of Texas having its principal place of business at 911 NW Loop 281, Suite 211-23, Longview, Texas 75604 on the one hand, and Xerox International Partners, a partnership organized and existing under the laws of California, with a principal place of business located at 3174 Porter Drive, Palo Alto, CA 94304-1346 ( "**XIP**," as further defined below)

### RECITALS

WHEREAS, PDIC filed a complaint against XIP, among others, for infringement of United States Patent No. 4,813,056 (the "**Asserted Patent**," as further defined below) in the United States District Court for the Eastern District of Texas (2:10-CV-29-TJW), transferred to the United States District Court for the Southern District of New York (2:12-cv-04896-CDJ) (the "**Litigation**");

WHEREAS, PDIC and XIP wish to resolve all of the claims asserted in the Litigation; and

WHEREAS, PDIC and XIP wish to avoid further litigation risks and expenses, and mutually seek an amicable, agreeable and final resolution and settlement of the disputes raised in the Litigation.

NOW, THEREFORE, PDIC and XIP agree as follows:

## ARTICLE I
## DEFINITIONS

As used in this Agreement and in addition to terms defined elsewhere in this Agreement, the following terms shall have the following meanings:

"**PDIC**" means Princeton Digital Image Corporation and includes without limitation Princeton Digital Image Compression, LLC, and all past, present, and future parents, subsidiaries, affiliates, predecessors, successor companies, corporations, partnerships, or other business entities, and the principals, officers, directors, agents, employees, partners, or consultants of any of the foregoing.

"**XIP**" means Xerox International Partners and all of its past, present, and future parents (said "past, present, and future parents" specifically including Xerox Corporation and Fuji Xerox Co., Ltd.), subsidiaries, affiliates, successors, predecessor companies, corporations, partnerships, or other business entities (but specifically excluding for the avoidance of doubt, Fuji Photo Film Co., Fujifilm Corporation, Fujifilm Holdings Corporation a/k/a Fujifilm Holdings America

1

CONFIDENTIAL - ATTORNEYS EYES ONLY

Corporation, or Fujifilm North America Corporation f/k/a Fujifilm U.S.A. Inc.), and the officers, directors, agents, employees, attorneys, partners, or consultants of any of the foregoing.

Section 1.1   **Parties**" means PDIC and XIP collectively, and "Party" means PDIC or XIP, depending on the context in which the term is used.

Section 1.2   **Asserted Patent**" means: (a) United States Patent No. 4,813,056; (b) any divisional, continuation, continuation-in-part, reissue, reexamination, renewal, extension, or foreign counterpart of United States Patent No. 4,813,056; and (c) any other patents that claim priority to the patent described in (a) or (b) above, whether issued before or after the Effective Date.

## ARTICLE II
## LICENSE AND RELEASE

Section 2.1   License to XIP.  Subject to XIP's payment obligations set forth in Article IV of this Agreement, PDIC hereby grants XIP a perpetual and irrevocable, fully paid-up, nonexclusive, worldwide license under the Asserted Patent to: (a) make, have made, use, sell, offer for sale and import products; (b) practice any methods, processes, or procedures; and (c) commercialize any products or services by or on behalf of XIP, or under a trademark or service mark owned by XIP, without regard to branding (including hardware, software, firmware, or any combination of hardware, software, firmware, or services, components, materials, and services, the commercialization of which were, are, or could be alleged to be covered by the Asserted Patent). The term of the license granted in this Section 2.1 shall be from the Effective Date.

Section 2.2   Release of XIP.  Subject to XIP's payment obligations set forth in Article IV of this Agreement, PDIC hereby fully and forever releases and discharges XIP and employees, officers, directors, shareholders, partners, assigns, attorneys and agents of XIP and any of its predecessors and successors, from and against any and all claims for patent infringement of the Asserted Patent that is based in whole or in part on a product that was manufactured, used, sold, offered for sale, leased, imported, or otherwise transferred, or on a service or method that was provided, performed, practiced, sold, offered for sale, or otherwise transferred by or on behalf of XIP or under a trademark or service mark owned by XIP, including without limitation any product, service, or method of XIP accused in the Litigation.

Section 2.3   Release of XIP Customers.  Subject to XIP's payment obligations set forth in this Agreement, PDIC hereby fully and forever releases and discharges the direct and indirect distributors, dealers, retailers, resellers, value added resellers (VARs), original equipment manufacturers (OEMs), service providers, operators, customers, and end users of XIP from and against any and all claims for patent infringement of the Asserted Patent that is based in whole or in part on a product that was manufactured, used, sold, offered for sale, leased, imported, or otherwise transferred, or on a service or method that was provided, performed, practiced, sold, offered for sale, or otherwise transferred, by or on behalf of XIP or under a trademark or service mark owned by XIP either before or after the Effective Date, including any product, service, or method of XIP accused in the Litigation.

CONFIDENTIAL - ATTORNEYS EYES ONLY                                                                                    PDIC023078

Section 2.4 <u>Exclusion from Release</u>. It is expressly understood between the Parties that the license and release granted under this Article II shall not serve to release Hewlett Packard Company, Fujifilm Corporation, Fujifilm Holdings Corporation a/k/a Fujifilm Holdings America Corporation, Fujifilm North America Corporation f/k/a Fujifilm U.S.A. Inc., Facebook, Inc., Corbis Corporation, Getty Images (US), Inc., Apple, Inc., Microsoft Corporation, Kyocera Communications, Inc., Kyocera Electronic Devices, LLC, Kyocera Wireless Corporation, Kyocera America, Inc., Kyocera International, Inc., Kyocera Document Solutions America, Inc., Kyocera Document Solutions Development America, Inc., Kyocera Corporation, Amazon.Com, Inc., Dell, Inc., Office Depot Inc., OfficeMax Incorporated, Staples, Inc., BestBuy.com LLC, Best Buy Co. Inc., Best Buy Stores LP, CDW Corporation, CDW LLC, eBay, Inc., Netflix Inc., Target Corporation, Gap, Inc., Williams-Sonoma Inc., 1-800-Flowers.com Inc., CBS Interactive Inc., AG Interactive Inc., AGCM Inc., AG.com Inc., J.C. Penney Company, Inc., Avon Products, Inc., Buy.Com Inc., Cabela's Incorporated, Costco Wholesale Corporation, Drugstore.com Inc., HSN Interactive LLC, IAC/InterActiveCorp, The Neiman Marcus Group Inc., Neiman Marcus Inc., Nordstrom.com LLC, Nordstrom.com Inc., Nordstrom Inc., Scholastic Corporation, Toys 'R' Us Inc., PPR Americas Inc., QVC Inc., Sears Holdings Corporation, Wal-Mart.com USA LLC, Wal-Mart.com Inc., Spiegel LLC, Systemax Inc., L.L. Bean Inc., Limited Brands Inc., Macy's Inc., Abercrombie & Fitch Co., J. Crew Group Inc., American Eagle Outfitters Inc., Alticor Global Holdings Inc., Quixtar.com Inc., Alticor Inc., Amway Corporation, Blue Nile Inc., Coldwater Creek Inc., Disney Shopping Inc., Walt Disney Company, Euromarket Designs Inc. of Delaware, Euromarket Designs Inc., Footlocker.com Inc., Eastbay Inc., FTD Group Inc., United Online Inc., Musician's Friend Inc., Guitar Center Inc., Oriental Trading Company Inc., OTC Direct Inc., Recreational Equipment Inc., Saks Direct LLC, and Saks Incorporated, or their past, present, and future parents, subsidiaries, affiliates, successors, predecessor companies, corporations, partnerships, or other business entities (collectively the "Excluded Parties"), and the officers, directors, agents, employees, attorneys, partners, or consultants, or any joint venture, partnership, or other association between XIP and one or more of the Excluded Parties, from liability under the Asserted Patents. Notwithstanding the foregoing, the releases granted in Sections 2.2 and 2.3 shall apply to release any Excluded Party for any claim for patent infringement of the Asserted Patent that is based on a product that was manufactured, used, sold, offered for sale, leased, imported, or otherwise transferred, or on a service or method that was provided, performed, practiced, sold, offered for sale, or otherwise transferred, by XIP or under the XIP trademark or service mark (as reflected in discovery responses made by XIP) either before or after the Effective Date, including any product, service, or method of XIP accused in the Litigation.

Section 2.5 <u>Release of PDIC</u>. Except for the obligations created by or arising out of this Agreement, XIP hereby fully and forever releases and discharges PDIC and the predecessors and successors and employees, officers, directors, shareholders, partners, assigns, attorneys and agents and any of its predecessors and successors from any and all causes of action, actions, rights of action, suits, judgments, liens, indebtedness, damages, losses, claims, liabilities, obligations, attorneys' fees, costs, expenses, and demands of every kind and character, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, that arises from or is in any way related to the Litigation.

CONFIDENTIAL - ATTORNEYS EYES ONLY                                          PDIC023079

## ARTICLE III
## DISMISSAL OF THE LITIGATION

Section 3.1    Dismissal. The Parties shall execute a stipulation of dismissal in the form set forth in Exhibit "A" hereto and, within five (5) business days of the execution of this Agreement, PDIC shall file such executed stipulation of dismissal with the Court along with the proposed order of dismissal in the form set forth in Exhibit "B" hereto.

Section 3.2    No Admission. The Parties agree that the settlement of the Litigation is intended solely as a compromise of disputed claims. Neither the fact of a Party's entry into this Agreement nor the terms hereof, nor any acts undertaken pursuant hereto, shall constitute an admission or concession by either Party regarding liability or the validity of any claim or defense asserted in the Litigation.

Section 3.3    Costs and Expenses. The Parties agree that they shall bear their own costs and attorneys' fees relating to the Litigation.

Section 3.4    Complete Settlement. The Parties agree that this Agreement is a full and complete settlement of the rights and liabilities of the Parties in connection with the claims released in this Agreement. This Agreement constitutes a full and complete defense to, and may be used to seek an injunction against, any action, suit, claim, or other proceeding of any type that may be prosecuted, initiated, or attempted in violation of the terms hereof. In furtherance of this intention, the Parties acknowledge that they are aware that they, or their attorneys, may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the subject matter of this Agreement or the Litigation, but that the Parties' intention is to settle and release all of the matters set forth in this Agreement, known and unknown, suspected or unsuspected, which now exist, may exist, or heretofore have existed, between them. In furtherance of this intention, the releases herein given shall be and remain in effect notwithstanding the discovery or existence of any such additional or different claims or facts.

## ARTICLE IV
## PAYMENT

Section 4.1    Royalties. PDIC has sought a royalty of one percent of the selling price of each product alleged to fall within the scope of the Asserted Patents. The payment set forth at Section 4.2 reflects PDIC's expectation of XIP's sales of products alleged to fall within the scope of the Asserted Patents, given the status of discovery to date and a discount for early settlement given such status.

Section 4.2    Payments by XIP. XIP shall pay PDIC the sum of $60,000.00 in United States currency payable within 20 days of the Effective Date. This payment by XIP shall be made by wire transfer to the following bank account of PDIC:

      ABA#: 031301752
      Short Name: ATL CENT CAMP HILL
      Beneficiary Financial Institution: First Choice Bank

CONFIDENTIAL - ATTORNEYS EYES ONLY      PDIC023080

Account #220545
Beneficiary: Princeton Digital Image Corporation
Account number 3010007536

## ARTICLE V
## WARRANTIES

PDIC represents and warrants that: (a) it has all requisite legal right, title, power and authority to execute, deliver and perform under this Agreement; (b) PDIC has not alienated or otherwise transferred to any third party any rights under any of the claims asserted against XIP in the Litigation; (c) PDIC owns and controls the Asserted Patent, including all rights to enforce and license the Asserted Patent to XIP and all rights to grant an absolute and complete release of liability to XIP related to the Asserted Patent as set forth in this Agreement.

## ARTICLE VI
## CONFIDENTIALITY

Section 6.1   In General.   Each Party agrees that it will not disclose the terms of this Agreement or information relating to this Agreement without the prior written consent of the other Party, subject to the following exceptions:

(a) a Party may disclose this Agreement or information related to this Agreement in response to a valid subpoena issued in litigation, so long as (i) the disclosing Party provides written notice of the disclosure to the non-disclosing Party at least ten (10) business days prior to the disclosure, (ii) the disclosing Party provides the non-disclosing Party with the opportunity to move for a protective order related to the disclosure, and (iii) the disclosing Party makes its best efforts to limit the disclosure to outside counsel of record in the litigation, including by clearly marking the Agreement and any related documents as "Outside Counsel Eyes Only" or with some other functionally similar designation; or

(b) a Party may disclose this Agreement or information related to this Agreement as required by law or legal process, including pursuant to an audit, legal requirements and regulations of the United States Securities and Exchange Commission, or rules of the NYSE or NASDAQ.

## ARTICLE VII
## ASSIGNMENT

Section 7.1   Successors and Assigns.   This Agreement shall inure to the benefit of and be binding upon each of the Parties hereto and to their respective successors and assigns.

Section 7.2   Assignment.   This Agreement may not be assigned in whole or in part by either Party without the prior written consent of the other Party, except that XIP may assign this Agreement or any of its rights or obligations arising hereunder to the surviving entity in a

CONFIDENTIAL - ATTORNEYS EYES ONLY

merger, acquisition, or consolidation in which XIP participates, or to a purchaser of all or substantially all of the business or assets of XIP.

## ARTICLE VIII
## TERM AND TERMINATION

Section 8.1   This Agreement shall be effective on the Effective Date and shall thereafter be non-terminable and shall continue in perpetuity. There shall be no right to terminate this Agreement.

## ARTICLE IX
## MISCELLANEOUS

Section 9.1   Entire Agreement. This Agreement sets forth the entire agreement and understanding between the Parties as to the Litigation and merges all prior discussions between them and neither of the Parties shall be bound by any conditions, definitions, warranties, waivers, releases or representations, express or implied, with respect to the subject matter of this Agreement other than as expressly provided for herein, or as duly set forth on or subsequent to the date hereof in a writing signed by a duly authorized representative of the Party to be bound.

Section 9.2   No Waiver. If at any time either Party shall elect not to assert its rights under any provision of this Agreement, such action or lack of action in that respect shall not be construed as a waiver of that Party's rights under said provision or of any other provision of this Agreement.

Section 9.3   Notices. Except as otherwise required by this Agreement, any notice or request required by this Agreement to be sent by any Party to the other Party shall be given in writing which will be deemed delivered (i) when received, in the case of personal delivery and international overnight carrier, and (ii) on the next business day, when delivered by domestic overnight carrier. Any such notice or request will be addressed, in respect of XIP, to:

> Xerox International Partners
> 3174 Porter Drive
> Palo Alto, CA 94304-1346
> Attn:   CEO

With a copy to:

> William H. Mandir
> Sughrue Mion, PLLC
> 2100 Pennsylvania Ave. N.W. Suite 600
> Washington, D.C. 20037

and, in respect of PDIC, to:

> Gregory M. Luck, P.C.

CONFIDENTIAL - ATTORNEYS EYES ONLY                                                                    PDIC023082

Duane Morris LLP
1330 Post Oak Blvd., Suite 800
Houston, Texas 77056-3166

Section 9.4  Choice of Law.  This Agreement shall be governed and construed in accordance with the laws of Texas, without regard to conflict of law principles. All disputes between the Parties relating to the construction or interpretation of this Agreement shall be heard by a court of competent jurisdiction in Texas.

Section 9.5  Severability.  The Parties agree that invalidity or unenforceability of any of the provisions hereof shall not in any way affect the validity or enforceability of any other provisions of this Agreement except for those to which the invalidity or unenforceability comprises an integral part of or is otherwise clearly inseparable from such other provision.

Section 9.6  Authority.  Each Party represents that the person signing this Agreement on its behalf has such requisite corporate authority to bind that Party.

Section 9.7  Counterparts.  This Agreement may be executed in separate counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same instrument. The Parties agree to accept facsimile or image copies of the executed Agreement as an original of same.

IN WITNESS WHEREOF, the Parties hereof have caused this Agreement to be signed on the dates as indicated hereunder.

**PRINCETON DIGITAL IMAGE CORPORATION**

Signature: *Thomas Meagher*
Name: Thomas F. Meagher
Title: President
Date: 7/3/13

**XEROX INTERNATIONAL PARTNERS**

Signature: *Tom Beall*
Name: Tom Beall
Title: CFO
Date: 6/28/13

7