IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRINCETON DIGITAL IMAGE CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>HEWLETT-PACKARD, et al.;<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIMS | Civil Action No. 1:12-cv-779 (RJS)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT HEWLETT-PACKARD COMPANY'S RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT BASED ON SETTLEMENT AGREEMENT BETWEEN PLAINTIFF AND MICROSOFT CORP.**

Pursuant to Rule 56.1 of the Local Rules of the Southern District of New York, Defendant Hewlett-Packard Company ("HP") sets forth the following statement of material facts as to which there is no genuine issue to be tried:

1. On June 28, 2013, Plaintiff Princeton Digital Image Corporation ("PDIC") and Microsoft Corporation ("Microsoft") executed a Settlement and License Agreement (the "Agreement"). HP Exhibit 1.

2. Sean O'Kelly, PDIC's lead counsel in this case, negotiated the Agreement for PDIC. HP Exhibit 2, Meagher Depo. at 307:9-22.

3. Pursuant to Section VI of the Agreement, PDIC received ▓▓▓▓▓▓ ▓▓▓▓▓▓ from Microsoft in consideration of the releases, licenses and covenants that PDIC granted to Microsoft and the "Microsoft Third Parties" in Sections III, IV and V of the Agreement. HP Exhibit 1; HP Exhibit 2, Meagher Depo. at 319:25-320:8.

4. The Agreement was intended to "completely resolve any PDIC Claim for Relief according to the Terms and Conditions below." HP Exhibit 1, p. 1.

5. Section 1.8 of the Agreement defines "Microsoft Products" as follows:

> **1.8** **"Microsoft Products"** means (1) any past, present, or future technology, software, product, equipment, method, or service ("Offering") of Microsoft or any Microsoft Released Party, including without limitation any past, present or future Offering that is made by or for, designed by or for, provided to, provided by or for, obtained from, obtained by or for, purchased from, purchased by or for, sold or offered for sale to, sold or offered for sale by or for, imported or exported to, imported or exported by or for, used by or for, distributed to, distributed by or for, leased to, leased by or for, hosted to, hosted by or for, licensed from, or licensed by or for Microsoft or any Microsoft Released Party and (2) any past, present or future combination, hybrid or aggregation that incorporates or uses any Offering described in 1.8(1) above, including without limitation any use with or combination, hybrid or aggregation with any past, present or future third-party Offering.

HP Exhibit 1, p. 2.

6. Section 1.10 of the Agreement defines "Microsoft Third Parties" as follows:

> **1.10** **"Microsoft Third Parties"** means any Entity other than Microsoft, including, for example, Microsoft's customers, suppliers, original device manufacturers, original equipment manufacturers, licensees, hosters, distributors, independent software vendors, and end users.

HP Exhibit 1, p. 2.

7. At all relevant times, HP has been a customer of Microsoft. *See* HP Declaration of Paolo Fontani ("Fontani Decl."); HP Declaration of Bradley R. Larson ("Larson Decl."); HP Declaration of Curt Behrend ("Behrend Decl.").

8. Under Section 3.2 of the Agreement, PDIC voluntarily and irrevocably released the Microsoft Third Parties from all Claims for Relief as to the Microsoft Products:

> 3.2 In consideration for the payment described in Section 6, PDIC and its Affiliates, on behalf of themselves and their predecessors, successors, assigns, heirs, executors, administrators,

2

> attorneys, insurers, agents, subcontractors, officers, directors, shareholders, members, and employees, voluntarily and irrevocably release each of the Microsoft Third Parties of and from any and all Claims for Relief, including without limitation for any infringement of the Licensed IP, but only as to Microsoft Products, that the PDIC Releasing Entities have, may have had, might have asserted, may now have or assert, or may hereafter have or assert against the Microsoft Third Parties, or any of them.

HP Exhibit 1, p. 3.

9. Under Section 4.2 of the Agreement, PDIC granted the Microsoft Third Parties a worldwide, irrevocable, fully paid-up license for the Microsoft Products. HP Exhibit 1, p. 4.

10. Under Section 5.2 of the Agreement, PDIC covenanted not to sue the Microsoft Third Parties based on the Microsoft Products. HP Exhibit 1, p. 5.

11. Under Section 4.3 of the Agreement, PDIC agreed to withdraw its infringement contentions relating to the Microsoft Products, including those asserted against HP:

> Within ten (10) business days of execution of this Agreement, the PDIC Releasing Entities will withdraw any and all infringement contentions related to the Licensed IP that relate in whole or in part to a Microsoft Product, including without limitation any Microsoft Product-related infringement contentions asserted against Hewlett-Packard ("HP") in *Princeton Digital Image Corp. v. Hewlett-Packard, et al.*, which is currently pending in in [sic] the U.S. District Court for the Southern District of New York and designated 1:12-cv- 779-RJS ("the HP Action").

HP Exhibit 1, p. 5; *see also* HP Exhibit 7 (Agreement required PDIC to withdraw claims against HP products that included Microsoft "software tools").

12. Under Section 5.3 of the Agreement, HP is a third-party beneficiary of the Agreement "and is entitled to enforce the Licenses, releases, or covenants without joinder of Microsoft." HP Exhibit 1, p. 5.

13. Under Section 9.1, PDIC agreed that the Agreement may be pleaded as a complete defense to any action in violation of the terms of the Agreement. HP Exhibit 1, p. 8.

3

14. Under Section 9.11 of the Agreement, PDIC agreed that any ambiguity would be resolved in favor of finding no liability as to the Microsoft Third Parties in connection with the Licensed IP. HP Exhibit 1, p. 10.

15. PDIC has no evidence outside the PDIC-Microsoft Agreement that would inform the interpretation of any part of the Agreement. HP Exhibit 2, Meagher Depo. at 309:7-13.

16. PDIC has no position about whether HP digital cameras, printers and other devices combined with Microsoft software would qualify as "Microsoft Products" under Section 1.8 of the Agreement. HP Exhibit 2, Meagher Depo. at 317:3-10; 312:18-314:15; 318:1-4; 318:13-20; HP Exhibit 3, pp. 5-6; HP Exhibit 4, pp. 6-8; Dkt. No. 423, Hearing Tr. at 7:16-23.

17. PDIC accuses of infringement the following HP products sold between 2004 and 2007: (1) certain models of HP digital cameras; (2) certain HP scanner products (HP laser printers and inkjet printers with scanning capabilities, and a single HP scanner model); and (3) HP's Snapfish photo service. HP Exhibit 5.

18. Each accused HP product qualifies as a "Microsoft Product" under Section 1.8, because each is a combination, hybrid, or aggregation that "incorporates or uses" a Microsoft "Offering." HP Exhibit 1, p. 2; Fontani Decl. ¶¶ 4-10; Larson Decl. ¶¶ 4-11; Behrend Decl. ¶¶ 4-10; HP Declaration of Jimmie Sato ("Sato Decl.") ¶¶ 3-7; HP Exhibits 6, 12.

19. Each accused HP product is designed for use with a Microsoft operating system and/or the Microsoft Internet Explorer Web browser. Fontani Decl. ¶ 5; Larson Decl. ¶ 5; Behrend Decl. ¶ 6; Sato Decl. ¶ 3.

20. Each accused HP camera, printer and scanner passed Microsoft's Windows Hardware Quality Lab ("WHQL") testing, which is required for certification by Microsoft and

was "an absolute requirement" for HP.  Fontani Decl. ¶ 5; Larson Decl. ¶ 5; Behrend Decl. ¶ 6; HP Exhibit 11, Fontani Depo. at 61:8-13.

21. Each accused HP camera, printer and scanner incorporates and uses one or more Microsoft Catalog (".cat") files, which are digitally-signed software files provided by Microsoft that allow the HP accused products to be seamlessly plugged into and operated with a Microsoft operating system.  Fontani Decl. ¶¶ 6-10; Larson Decl. ¶¶ 7-11; Behrend Decl. ¶¶ 8-10.

22. Each accused HP camera, printer and scanner incorporates and uses the Microsoft FAT32 File System, which HP uses as the main internal file system for storage of information on the accused products and which runs in the firmware on the HP accused products.  Fontani Decl. ¶ 11; Larson Decl. ¶ 12; Behrend Decl. ¶ 11.

23. The Microsoft FAT32 File System helps HP to develop new products by allowing developers to easily exchange files on the device, and it allows camera users to view and download photos from the camera onto a Microsoft Windows PC.  Larson Decl. ¶ 12; Fontani Decl. ¶ 11.

24. Since before 2004, HP has used the Microsoft Windows Software Development Kit ("SDK"), which allows HP to develop printer software that works with Microsoft operating systems.  Larson Decl. ¶ 6; Behrend Decl. ¶ 7.

25. Since before 2004, HP has used the Microsoft Windows installer ("MSI installer"), a Microsoft software component used for the installation, maintenance and removal of HP software on Windows PCs.  Larson Decl. ¶ 6; Behrend Decl. ¶ 7.

26. The HP Snapfish service was designed to be used with the Microsoft Internet Explorer Web browser.  Sato Decl. ¶ 3.

27. In the 2004 through 2007 timeframe, the vast majority of users accessed Snapfish through the Microsoft Internet Explorer Web browser, so it was critical that Snapfish be able to operate seamlessly with Internet Explorer. Sato Decl. ¶ 3.

28. In the 2004 through 2007 timeframe, much of Snapfish's supporting infrastructure ran on Microsoft Windows servers. Sato Decl. ¶ 4.

29. Since at least 2004, Snapfish has used Microsoft's ActiveX technology as the primary software application to upload images and photos. Sato Decl. ¶ 5.

30. Starting in July 2005, Snapfish was designed to be used with Microsoft Windows XP Print Wizard. Sato Decl. ¶ 6.

31. Starting in 2006, Snapfish engineers developed and released a new client software application called HP Picture Mover, which was designed to be downloaded and run on Microsoft Windows PCs. Sato Decl. ¶ 7.

Dated: April 25, 2014

                                                                 /s/ Sean C. Cunningham
Sean C. Cunningham (*pro hac vice*)
sean.cunningham@dlapiper.com
Erin P. Gibson (*pro hac vice*)
erin.gibson@dlapiper.com
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:     619-699-2700
Facsimile:       619-699-2701

Brian K. Erickson (*pro hac vice*)
brian.erickson@dlapiper.com
**DLA PIPER US LLP**
401 Congress Ave., Suite 2500
Austin, TX  78701-3799
Telephone:     512-457-7059
Facsimile:       512-457-7001

**ATTORNEYS FOR DEFENDANT
HEWLETT-PACKARD COMPANY**