UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _03.26.15_
```

PRINCETON DIGITAL IMAGE CORP.,

Plaintiff,

-v-

HEWLETT-PACKARD CO., *et al.*,

Defendants.

No. 12-cv-779 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Princeton Digital Image Corp. ("PDIC") brings this action against Hewlett-Packard Co. ("HP") and Fujifilm North America Corp. ("FNA") (collectively, "Defendants"), asserting that Defendants infringed certain of PDIC's patents. Defendants now move for summary judgment, arguing that a settlement agreement between PDIC and Microsoft Corp. ("Microsoft") has resolved all of PDIC's patent infringement claims against HP and FNA. (Doc. Nos. 433 & 437.) For the reasons set forth below, the Court grants Defendants' motion.

I. Background

A. Facts[1]

PDIC holds title to patent numbers 4,813,056 (the "'056 Patent") and 4,860,103 (the "'103 Patent") (collectively, the "Patents"), each of which covers certain digital image processing

---

[1] The following facts are drawn from the parties' Local Civil Rule 56.1 Statements and Responses. (Doc. No. 433 ("FNA 56.1 Stmt."); Doc. No. 470 ("HP 56.1 Stmt."); Doc. No. 459 ("PDIC 56.1 Stmt."); Doc. No. 458 ("PDIC 56.1 Resp. to FNA"); Doc. No. 461 ("PDIC 56.1 Resp. to HP").) Unless otherwise noted, where only one party's 56.1 Statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In deciding this motion, the Court also considered Defendants' memorandum of law in support of their motion (Doc. No. 469 ("Def. Mem.")), PDIC's memorandum of law in opposition to their motion (Doc. No. 460 ("PDIC Opp.")), and Defendants' reply (Doc. No. 465 ("Def. Rep.")), along with the affidavits and exhibits attached thereto.

technology.  Beginning in 2010, PDIC filed lawsuits against, *inter alia*, HP and FNA, alleging that certain models of HP and FNA digital cameras, certain models of HP and FNA scanners and printers, and HP's Snapfish photo service (collectively, the "Accused Products") infringe the Patents.  (HP 56.1 Stmt. ¶ 17; FNA 56.1 Stmt. ¶ 4 & 10.)

There is no dispute that each HP and FNA camera, scanner, and printer utilizes Microsoft Catalog (".cat") files, which are software files that Microsoft provides to HP and FNA to allow HP and FNA products to seamlessly operate with a Microsoft operating system.  (HP 56.1 Stmt. ¶ 21; Declaration of Curt Behrend, dated April 24, 2014, Doc. No. 438 ("Behrend Decl.") ¶¶ 8-10; Declaration of Paolo Fontani, dated April 22, 2014, Doc. No. 439 ("Fontani Decl.") ¶¶ 6-10; Declaration of Bradley Larson, dated April 23, 2014, Doc. No. 440 ("Larson Decl.") ¶¶ 7-11; FNA 56.1 Stmt. ¶ 6; Declaration of Masanori Yoshida, dated April 25, 2014, Doc. No. 436 ("Yoshida Decl.") ¶ 12.)  Furthermore, each HP and FNA camera, scanner, and printer utilizes the Microsoft FAT32 File System, which facilitates the exchange of data between the HP and FNA products and the Microsoft operating system.  (HP 56.1 Stmt. ¶¶ 22-23; Behrend Decl. ¶ 11; Fontani Decl. ¶ 11; Larson Decl. ¶ 12; FNA 56.1 Stmt. ¶¶ 7-8; Yoshida Decl. ¶¶ 5-7.)  Finally, HP's Snapfish photo service utilizes Microsoft's ActiveX technology to enable users to upload images and photos to the online Snapfish service.  (HP 56.1 Stmt. ¶ 29; Declaration of Jimmie Sato, dated April 23, 2014, Doc. No. 441 ("Sato Decl.") ¶ 5.)

On June 28, 2013, arising out of a lawsuit that PDIC filed against Microsoft in the District of Delaware, PDIC and Microsoft executed a Settlement and License Agreement (Doc. No. 471 Ex. 1 (the "Microsoft Settlement")) to "completely resolve any PDIC Claim for Relief according to the Terms and Conditions" listed therein.  (Microsoft Settlement at 1.)  The parties defined

several terms to delineate the scope of the Microsoft Settlement.  Three are relevant here.  Section

1.7 of the Microsoft Settlement defines "Licensed IP" as:

> (a) any and all intellectual property . . . owned or controlled now or in the future (in whole or in part) by PDIC or any of PDIC's Affiliates; (b) any and all intellectual property . . . under which PDIC or any of PDIC's Affiliates have or obtain in the future the right to control, sue or license (in whole or in part); and (c) any and all intellectual property . . . that might issue, will issue, or have issued from an application . . . that is based on, that claims or describes the same or similar subject matter of, or that includes as part of its priority claim or list of related applications, any of the intellectual property described in 1.7(a) and (b) above.  Licensed IP includes without limitation [the Patents].

Section 1.8 of the Microsoft Settlement defines "Microsoft Products" as:

> (1) any past, present, or future technology, software, product, equipment, method, or service ("Offering") of Microsoft or any Microsoft Released Party, including without limitation any past, present or future Offering that is made by or for, designed by or for, provided to, provided by or for, obtained from, obtained by or for, purchased from, purchased by or for, sold or offered for sale to, sold or offered for sale by or for, imported or exported to, imported or exported by or for, used by or for, distributed to, distributed by or for, leased to, leased by or for, hosted to, hosted by or for, licensed from, or licensed by or for Microsoft or any Microsoft Released Party and (2) any past, present or future combination, hybrid or aggregation that incorporates or uses any Offering described in 1.8(1) above, including without limitation any use with or combination, hybrid or aggregation with any past, present or future third-party Offering.

Section 1.10 of the Microsoft Settlement defines "Microsoft Third Parties" as:

> any Entity other than Microsoft, including, for example, Microsoft's customers, suppliers, original device manufacturers, original equipment manufacturers, licensees, hosters, distributors, independent software vendors, and end users.

The Microsoft Settlement also contains a series of licenses, releases, and covenants not to sue that

apply to Microsoft Products and Microsoft Third Parties.  Three are relevant here.  Section 3.2 of

the Microsoft Settlement, under "Release," states that:

> [i]n consideration for the payment described in Section 6, PDIC and its Affiliates . . . voluntarily and irrevocably release each of the Microsoft Third Parties of and from any and all Claims for Relief, including without limitation for any infringement of the Licensed IP, but only as to Microsoft Products, that the PDIC Releasing Entities have, may have had, might have asserted, may now have or assert, or may hereafter have or assert against the Microsoft Third Parties, or any of them.

Section 4.2 of the Microsoft Settlement, under "License," states that:

> [i]n consideration of the payment provided for in Section 6, PDIC and its Affiliates . . . grant to the Microsoft Third Parties a worldwide, irrevocable, nonexclusive, perpetual, fully paid up, retroactive, current, and future license ("License") to and under the Licensed IP, but only as to Microsoft Products. . . . This Agreement is intended to and does exhaust all rights of the PDIC Releasing Entities in all Claims for Relief associated with any Licensed IP as to Microsoft Third Parties in connection with Microsoft Products, including all such Claims for Relief anywhere in the world.

Section 5.2 of the Microsoft Settlement, under "Covenant Not To Sue," states that:

> PDIC and its Affiliates . . . irrevocably covenant not to sue (or otherwise act in any way to seek to enforce or assist or encourage anyone else to enforce any Claims for Relief against) any Microsoft Third Party in connection with any of the Licensed IP, but only as to Microsoft Products.

Finally, Section 5.3 of the Microsoft Settlement provides that "[a]ny Entity that is within the scope of the Licenses, releases, or covenants not to sue in this Agreement is intended to be, and is, a third-party beneficiary and is entitled to enforce the Licenses, releases, or covenants without joinder of Microsoft."

### B.  Procedural History

PDIC commenced this action on January 25, 2010 in the Eastern District of Texas, naming HP, FNA, and Xerox International Partners ("Xerox") as defendants.  (Doc. No. 1.)  PDIC filed its First Amended Complaint ("FAC") on May 11, 2010.  (Doc. No. 19.)  On February 1, 2012, the case was transferred to this district (Doc. No. 166), and on March 21, 2013, the Court denied

4

Defendants' motion to dismiss (Doc. No. 282).  Thereafter, on July 9, 2013, PDIC and Xerox stipulated to a dismissal with prejudice.  (Doc. No. 303.)

On April 25, 2014, HP and FNA filed amended answers and counterclaims to PDIC's FAC. (Doc. No. 432 & 434.)  On the same day, HP and FNA also filed motions for summary judgment based on the Microsoft Settlement.  (Doc. Nos. 433 & 437.)  On May 9, 2014, PDIC filed amended answers to the counterclaims of FNA (Doc. No. 447) and HP (Doc. No. 448).  Defendants' motion for summary judgment was fully submitted on June 3, 2014.  (Doc. No. 465.)

II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).  Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*,

132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]," *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## III. DISCUSSION

Under Washington law, which governs the Microsoft Settlement (*see* Microsoft Settlement § 9.6), courts follow the "objective manifestation theory of contracts," meaning that they focus "on the objective manifestations of the agreement, rather than the unexpressed subjective intent of the parties." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). Accordingly, under Washington law, contract interpretation turns on giving words "their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* Extrinsic evidence is relevant, if at all, "to determine the meaning of specific words and terms used" – not to "show an intention independent of the instrument" or to "vary, contradict, or modify the word." *Id.* (quoting *Hollis v. Garwall, Inc.*, 974 P.2d 836, 843 (Wash. 1999)); *see also Go2Net, Inc. v. C I Host, Inc.*, 60 P.3d 1245 (Wash. Ct. App. 2003) (parties may not use extrinsic evidence to demonstrate a party's subjective intent as to the contract's meaning). Finally, Washington courts consider contract interpretation as a question of law that is appropriate for a

court to determine at summary judgment, rather than a question of fact for a trier of fact.  *See*

*Hearst Commc'ns, Inc.*, 115 P.3d at 271 (granting summary judgment on the basis of the court's

interpretation of the contract at issue).

Applying Washington principles of contract interpretation to the Microsoft Settlement, the

Court finds that the Accused Products are in fact "Microsoft Products" covered by the settlement

agreement.  Accordingly, the Court concludes that PDIC released HP and FNA from liability,

licensed the Patents to HP and FNA, and covenanted not to sue HP and FNA for the Accused

Products.

A.  The Microsoft Settlement

The Microsoft Settlement was intended to "completely resolve any PDIC Claim for

Relief." (Microsoft Settlement at 1.)  To this end, the Microsoft Settlement provided that PDIC

would release from liability, license its patents to, and covenant not to sue any entity that was

covered by the terms of the agreement.  The question before the Court is which entities and

products are covered by the Microsoft Settlement.  HP and FNA argue that the Accused Products

fall within the Microsoft Settlement because they are third-party "Offerings" that "incorporate or

use" Microsoft "Offerings."  PDIC, on the other hand, asserts that the Accused Products are not

covered by the Microsoft Settlement because they are not "combination[s], hybrid[s] or

aggregation[s]" with Microsoft "Offerings."  The parties do not, and cannot, dispute that the

Patents are part of the "Licensed IP" that is the basis of the Microsoft Settlement (Microsoft

Settlement at 12), that HP and FNA are "Microsoft Third Parties" (*see, e.g.*, Fontani Decl; Toshida

Decl.), or that Microsoft .cat files, the Microsoft FAT32 File System, and Microsoft's ActiveX

technology are "Offerings" of Microsoft (Microsoft Settlement § 1.8(1)).  Therefore, the only

dispute is whether the Accused Products are "Microsoft Products" entitled to the broad "Release," "License," and "Covenant Not To Sue" in the Microsoft Settlement.

The Microsoft Settlement defines "Microsoft Products" in two clauses.  The first clause includes "any past, present, or future technology, software, product, equipment, method, or service ('Offering') of Microsoft or any Microsoft Released Party" (as defined herein, a "Microsoft Offering").  (Microsoft Settlement § 1.8(1).)  The second clause extends the term "Microsoft Products" to include "any past, present or future combination, hybrid or aggregation that incorporates or uses any [Microsoft] Offering."  (*Id.* § 1.8(2).)  The Microsoft Settlement does not describe what would constitute this second type of Microsoft Product, but does include as an example, "any use with or combination, hybrid or aggregation with any past, present or future third-party Offering."  (*Id.*)

Applying Washington's "objective manifestation theory of contracts," *Hearst Commc'ns, Inc.*, 115 P.3d at 267, it is clear that the definition of Microsoft Product includes "any past, present or future third-party Offering" that is a "combination, hybrid or aggregation that incorporates or uses any [Microsoft] Offering."  Significantly, Section 1.8 does not impose any additional restrictions on what constitutes a "Microsoft Product," and no other section in the Microsoft Settlement purports to limit or shape the definition of a "Microsoft Product."  Although the Microsoft Settlement does not define the terms "combination," "hybrid," "aggregation," "incorporates," or "uses," Washington courts give words "their ordinary, usual, and popular meaning," *Hearst Commc'ns, Inc.*, 115 P.3d at 267, and turn to standard English language dictionaries, such as *Webster's New International Dictionary* or *Black's Law Dictionary*, to determine the meaning of undefined contract terms, *see, e.g., Panorama Vill. Condo. Owners*

*Ass'n Bd. of Directors v. Allstate Ins. Co.*, 26 P.3d 910, 915 (Wash. 2001); *Kitsap Cnty. v. Allstate Ins. Co.*, 964 P.2d 1173, 1185 (Wash. 1998).

  *Black's Law Dictionary* contains multiple definitions of "aggregation" and "combination." However, because here the terms are used in the context of a patent licensing agreement, it is appropriate to use the patent definition of each. In that context, "aggregation" is defined as a "set of parts that do not cooperate in structure or function, and are therefore upatentable as an invention; the opposite of combination," *Black's Law Dictionary* 79 (10th ed. 2014), while "combination" is defined as a "union of elements in an invention that work together cooperatively to perform a useful function; the opposite of an aggregation," *id.* at 323. The word "hybrid" is not defined in *Black's Law Dictionary*, but *Webster's New International Dictionary* defines it as "one that is heterogeneous in origin or composition." *Webster's New International Dictionary* 1106 (3d ed. 2002). Finally, *Black's Law Dictionary* defines "incorporates" as "to combine with something else," *Black's Law Dictionary* 883 (10th ed. 2014), and defines "uses" as "to employ for the accomplishment of a purpose," *id.* at 1175.

  Applying these plain and ordinary meanings to the key undefined terms in Section 1.8, the breadth of Microsoft Product becomes clear. Microsoft Product includes "any past, present or future third-party Offering" that is a "combination, hybrid or aggregation that incorporates or uses any [Microsoft] Offering." In the patent context, "aggregation" and "combination" are opposites – the former refers to a "set of parts that do not cooperate in structure or function," *Black's Law Dictionary* 79 (10th ed. 2014), while the latter refers to a "union of elements in an invention that work together cooperatively to perform a useful function," *id.* at 323 – and the term "hybrid" logically is included in the definition to cover third-party Offerings that are somewhere along the spectrum that spans combinations and aggregations. Permitting Microsoft Products to be any

"combination," "hybrid," or "aggregation" is consistent with the general approach of Section 1.8, which is to make its application as broad as possible. The terms "incorporates" and "uses" also do nothing to circumscribe Section 1.8; rather, they reemphasize the breadth of the Microsoft Products definition.

PDIC attempts to limit this broad language by asserting that the definition of a "Microsoft Offering" does not include "products" made by third parties, even if that third-party product is made using a Microsoft Offering or is compatible with a Microsoft Offering. (PDIC Opp. at 3.) PDIC is, of course, correct that a Microsoft Offering does not include third-party products, but that fact is largely irrelevant since the term Microsoft Products – which is the relevant term for purposes of this motion – explicitly includes "any past, present or future third-party Offering," and "Offering" includes "any . . . product." (Microsoft Settlement § 1.8(2).) PDIC also asserts that the words "combination, aggregation or hybrid" curtail the breadth of the Microsoft Product definition (PDIC Opp. at 4), but puts forth no arguments or authority to undermine the plain and ordinary meanings of those words, which demonstrate that they serve to expand – not limit – the Microsoft Product definition.

PDIC also contends that the phrase "combination, aggregation or hybrid" somehow implies a nexus requirement between the Microsoft Offering that is used or incorporated, and the Licensed IP or the aspect of the third-party Offering that is allegedly infringing on the Licensed IP. (*See* PDIC Opp. at 5 ("Defendants point only to functionalities and systems that are *not* related to the systems and functionalities that are accused of infringement.").) But PDIC does not – and cannot – cite any language or provision in the Microsoft Settlement to support such a nexus requirement. The term "Licensed IP" is not referenced in the definition of Microsoft Products, and the only limitation in the "Release," "License," and "Covenant Not To Sue" is that the claim be related to

Microsoft Products. Of course, PDIC could have negotiated to have the Microsoft Settlement cover only third-party Offerings that were a "combination, hybrid or aggregation that incorporates or uses any [Microsoft] Offering" *that utilized the Patents*. But PDIC did not bargain for that. Instead, PDIC agreed to release, license, and covenant not to sue any Microsoft Third Party for any claim of infringement against any third-party Offering that incorporates or uses any Microsoft Offering. Although PDIC insists that this was not the intent of the parties when they drafted the Microsoft Settlement (Declaration of Michael Botts, dated May 23, 2014, Doc. No. 454), the subjective intent of one or more of the parties is irrelevant when the language of a contract is unambiguous.[2] Here, the plain and ordinary meaning of the words in the Microsoft Settlement is unambiguous and broad. Given the lack of ambiguity, the Court has no reason to peer behind the document itself in search of the subjective purposes of the parties. *See Hearst Commc'ns, Inc.*, 115 P.3d at 267 (noting that Washington courts should not consider the subjective intent of the contracting parties "unless the entirety of the agreement clearly demonstrates" an intent contrary to the one suggested by giving words "their ordinary, usual, and popular meaning").

The Court similarly rejects PDIC's argument that HP and FNA apparently did not initially believe that the Microsoft Settlement covered the Accused Products. (*See* PDIC Opp. at 12 (arguing that at the time PDIC shared the Microsoft Settlement with HP, "it is without dispute that HP's interpretation of the [Microsoft Settlement] was the same as PDIC's"); *id.* at 15 (arguing that immediately after PDIC disclosed the Microsoft Settlement to FNA, "FNA did not believe that its products were licensed under the [Microsoft Settlement]"). First, HP and FNA were not parties to

---

[2] Furthermore, the broad language is not inconsistent with logic, as it is certainly conceivable, and even likely, that Microsoft would have sought and insisted on a settlement that secured total peace for any and all of Microsoft's customers, suppliers, licensees, and end users. Indeed, the email correspondence between counsel for PDIC and Microsoft makes clear that Microsoft intended the agreement to be written such that Microsoft would not hear from PDIC again, "either directly or indirectly (e.g. through an indemnification claim from one of our customers)." (PDIC Opp. Ex. 1.) This desire fully comports with broadly drafting the Microsoft Settlement to include third-party Offerings that use or incorporate Microsoft Offerings.

the Microsoft Settlement and did not participate in negotiating its terms, so their initial reactions to, and knowledge of, the settlement are of no moment. (*See* Doc. No. 306 (attaching PDIC's letter to the Court in which PDIC describes the Microsoft Settlement).)   Second, and more importantly, the subjective intent or understanding of HP and FNA is no more relevant than the subjective intent of the parties who negotiated the agreement.   So long as the language of the agreement is unambiguous, the Court has no reason, or authority, to consider the subjective intent of the parties to the agreement, much less non-parties.

Finally, PDIC makes much of the language in Section 4.3 of the Microsoft Settlement, which requires PDIC to "withdraw any and all infringement contentions related to the Licensed IP that relate in whole or in part to a Microsoft Product, including without limitation any Microsoft Product-related infringement contentions asserted against Hewlett-Packard ("HP") in [this action]."   In essence, PDIC argues that the inclusion of HP specifically must have reflected that the Microsoft Settlement was intended to apply differently to the two Defendants, and therefore should not be read as broadly as the language would otherwise suggest.   However, as the Supreme Court has long recognized, use of the word "includes" or "including" in a sentence "makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2170 (2012) (citing *Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008)); *see also Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) (pointing out that "including" is not "all-embracing" but "connotes simply an illustrative application of the general principle").   Accordingly, the Court rejects PDIC's argument and relies on the plain language of the Microsoft Settlement to conclude that any third-party "Offering" that is a "combination," "aggregation," or "hybrid" that "incorporates or uses"

any Microsoft "Offering" is a Microsoft Product, regardless of whether the Microsoft "Offering" relates specifically to the Patents.

## B.  The Accused Products

Having determined the scope of the Microsoft Settlement, the Court now turns to whether the Accused Products fall under the definition of Microsoft Products.  The key question is whether the Accused Products (all third-party Offerings) are "combination[s], hybrid[s] or aggregation[s]" that "incorporate[] or use[]" Microsoft .cat files, Microsoft's FAT32 File System, and Microsoft's ActiveX technology (all Microsoft Offerings).

As noted above, there is no dispute that the accused HP and FNA cameras, scanners, and printers employ Microsoft .cat files, which are software files provided by Microsoft that allow HP and FNA cameras, scanners, and printers to seamlessly operate with a Microsoft operating system. (HP 56.1 Stmt. ¶ 21; FNA 56.1 Stmt. ¶ 6.)  HP and FNA cameras, scanners, and printers receive Microsoft .cat files after they pass Microsoft's Windows Hardware Quality Labs testing to ensure that the products function with Microsoft's operating systems.  (HP 56.1 Stmt. ¶ 20; FNA 56.1 Stmt. ¶¶ 5 & 10.)  The Microsoft .cat files are digitally signed certification files from Microsoft that are shipped with HP and FNA cameras, scanners, and printers so that when a user plugs in one of the cameras, scanners, and printers to a Windows PC, it operates seamlessly with the Microsoft operating system.  (HP 56.1 Stmt. ¶ 21; FNA 56.1 Stmt. ¶ 6.)  The Court finds that each of the accused HP and FNA cameras, scanners, and printers is therefore a "combination" – that is, a "union of elements in an invention that work together cooperatively to perform a useful function" – and that the accused HP and FNA cameras, scanners, and printers incorporate and use the Microsoft .cat files.  Accordingly, the Court concludes that the accused HP and FNA cameras, scanners, and printers are Microsoft Products.

The Court also finds that the accused HP and FNA cameras, scanners, and printers are Microsoft Products because of their use of Microsoft's FAT32 File System. (HP 56.1 Stmt. ¶¶ 22-23; FNA 56.1 Stmt. ¶¶ 7-8.) Microsoft's FAT32 File System facilitates data exchange between the HP and FNA cameras, scanners, and printers and Microsoft's operating system. (*Id.*) Furthermore, the Microsoft FAT32 File System is part of the firmware – which is a combination of software and hardware – that runs on the accused HP and FNA cameras, scanners, and printers, in addition to on a Microsoft Windows PC. (*Id.*) The accused HP and FNA cameras, scanners, and printers are thus clearly "combination[s]" with the Microsoft FAT32 File System and use Microsoft's FAT32 File System. Therefore, the Microsoft FAT32 File System provides another reason to conclude that the accused HP and FNA cameras, scanners, and printers are Microsoft Products.

Finally, it can hardly be disputed that HP's Snapfish photo service employs Microsoft's ActiveX technology. (HP 56.1 Stmt. ¶ 29.) Microsoft's ActiveX technology enables users to upload images and photos to the online Snapfish service through Microsoft's Internet Explorer web browser. The HP Snapfish photo service is thus a "combination" with Microsoft's ActiveX technology, which it uses and incorporates. Accordingly, the Court concludes that it too is a Microsoft Product.

PDIC contends that the Accused Products are not Microsoft Products because the Microsoft Offerings that the Accused Products use or incorporate do not relate to the Licensed IP, the Accused Products can function without using or incorporating the Microsoft Offerings, and the Microsoft Offerings employed by the Accused Products do not achieve full functionality until they are plugged in to a Microsoft Windows PC. (PDIC Opp. at 17-20.) As the Court previously concluded, the Microsoft Settlement contains no requirement that the Microsoft Offering and the

third-party Offering that uses or incorporates it be related to or have a nexus with the Licensed IP. Similarly, the Microsoft Settlement does not require that the used or incorporated Microsoft Offerings be necessary to the functioning of the third-party Offerings. Finally, even if the Accused Products' Microsoft's .cat files and FAT32 File System do not function unless plugged in to a Windows PC, the relationship between the two Offerings would be at a minimum an "aggregation" – a "set of parts that do not cooperate in structure or function" – and thus the Accused Products would still be Microsoft Products.

Because the Court finds that all of the Accused Products are Microsoft Products, the Court also finds that the "Release," "License," and "Covenant Not To Sue" all extend to HP and FNA in this action. Therefore, by the terms of the Microsoft Settlement, PDIC has agreed to (1) "irrevocably release" HP and FNA "of and from any and all Claims for Relief, including without limitation for any infringement of the Licensed IP," as to the Accused Products (Microsoft Settlement § 3.2); (2) "grant" HP and FNA "a worldwide, irrevocable, nonexclusive, perpetual, fully paid up, retroactive, current, and future license to and under the Licensed IP" as to the Accused Products (*Id.* § 4.2); and (3) "covenant not to sue (or otherwise act in any way to seek to enforce or assist or encourage anyone else to enforce any Claims for Relief against)" HP and FNA "in connection with any of the Licensed IP" as to the Accused Products (*Id.* § 5.2). Furthermore, pursuant to Section 5.3 of the Microsoft Settlement, HP and FNA are third-party beneficiaries who are "entitled to enforce the Licenses, releases, and covenants without joinder of Microsoft." Accordingly, the Court grants HP's and FNA's motions for summary judgment on the basis of the Microsoft Settlement.

IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT the Court grants HP's and FNA's motions for summary judgment. The Clerk of the Court is respectfully directed to terminate the motions pending at docket entries 433 and 437 and to close this case.

SO ORDERED.

Dated:      March 26, 2015
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE